551 A.2d 471

VILLAGE SQUARE NO. 1, INC., et al.

v.

CROW-FREDERICK RETAIL LIMITED
PARTNERSHIP, et al.

No. 457, Sept. Term, 1988.

Court of Special Appeals of Maryland.

Jan. 5, 1989.

Joseph V. Truhe, Jr. (William M. Canby and Miller, Miller & Canby, on the brief), Rockville, for appellants.

Stanton J. Levinson, Bethesda, for appellees.

Argued before MOYLAN, BISHOP and ROSALYN B. BELL, JJ.

ROSALYN B. BELL, Judge.

Village Square No. 1, Inc. and Croghan Square, Inc., appellants, appeal a decision of the Circuit Court for Frederick County. The trial court declared a portion of § 22–35 of the Frederick City Streets and Sidewalks Ordinance, concerning payment for public improvements, constitutionally invalid because it contained no due process protections for those who potentially could be liable for the costs. The sole issue in this appeal is whether the provision is constitutional.[1] We affirm the trial court and begin our explanation by providing the factual background of this appeal.

Appellants and Crow–Frederick Retail Limited Partnership and Prospect Park Limited Partnership (appellees) are the developers and owners of adjacent tracts of land in the City of Frederick (City). In developing their property, appellants extended Prospect Boulevard and Willow Avenue, and installed accompanying curbs, gutters and storm drains. Appellants paid almost $700,000 for these improvements.

In order to develop the property, appellants were required to pay for these improvements pursuant to a combination of the City's Subdivision Regulations § 2(g), which states that no subdivision plat shall be approved until the "necessary public improvements" have been installed and accepted, and § 22–35 of the Frederick City Streets and Sidewalks Ordi-

---

1. Appellants also assert that the trial court incorrectly interpreted the ordinance as permissive, as opposed to mandatory. Because we affirm the trial court on the constitutional ground, it is unnecessary for us to reach this issue.

nance, which we set forth in its entirety, or at least how it appeared in December of 1987:

"All costs of extending and placement of public facilities, including but not limited to, water, sewer, streets, curbs, and gutters, sidewalks and lighting shall be paid by the party desiring them. *Should such extensions be utilized by others within ten (10) years, the cost of all or a portion of such extension, as appropriate, if collected by the City, may be reimbursed to the party who incurred such cost.*" (Emphasis added.)

Appellants do not state, and the record does not reveal, exactly *when* they undertook this construction. In fact, appellants' brief is notable in that absolutely no dates are given for the factual statements contained within. Appellees stated, however, at oral argument that appellants made these improvements in 1983, at least two years *before* § 22–35 was amended from requiring the cost of "[w]ater and sewer extensions"[2] to "public facilities including but not limited to water, sewer, streets, curbs and gutters, sidewalks and lighting."[3] Appellants did not counter this statement in either argument or brief, so we shall assume that the improvements were made in 1983.

In any event, after the improvements were made, appellants attempted to get other landowners whose property

---

**2.** City of Frederick, Md.Code, § 22–35 (1984):
"Section 22–35. Cost of water and sewer extensions.
"Water and sewer extensions shall be at the sole expense of the party desiring service. Should such extensions be utilized by others within ten (10) years, the cost of all or a portion of such extension, as appropriate, if collected by the City, may be reimbursed to the party who incurred such cost."

**3.** City of Frederick, Md.Code, § 22–35 (1985):
"Section 22–35. Cost of public facilities.
"All costs of extending and placement of all public facilities including but not limited to water, sewer, streets, curbs and gutters, sidewalks and lighting shall be paid by the party desiring same. Should such extensions be utilized by others within ten (10) years, the cost of all or a portion of such extension, as appropriate, if collected by the City, may be reimbursed to the party who incurred such cost."

abutted Prospect Boulevard to contribute to appellants' costs of development. Appellee Crow–Frederick's predecessors in title,[4] as well as other landowners, refused to contribute. Subsequently, the second sentence of § 22–35 was amended to include other improvements in addition to water and sewer extensions. Appellees suggest that the statute was amended further at appellants' special request, but provide no factual support for this assertion. Our independent research has revealed no changes in the ordinance since 1980 which would benefit appellants. Even if there were no legislative history in regard to § 22–35, it would have been helpful to this Court to have been provided with some basic information about the ordinance, *e.g.*, a paragraph summarizing the various changes to the ordinance, or perhaps copies of the different versions of the ordinance, with relevant dates and citations. "The record extract shall contain all parts of the record that are reasonably necessary for the determination of the questions presented by the appeal." Rule 8–501(c). It is true that none of the information we refer to was presented at the summary judgment hearing and therefore not technically a part of the record. It seems elementary, however, that we would find this information indispensable as we have been asked to review the constitutionality of this ordinance.

Perhaps the most important omission in the record was that the City, presumably in response to the trial judge's determination that the second sentence was constitutionally defective, deleted it on March 17, 1988. The ordinance in its present form is as follows:

"**Sec. 22–35. Cost of public facilities.**

"All costs of extending and placement of all public facilities including but not limited to water, sewer, streets, curbs and gutters, sidewalks and lighting shall be paid by the party desiring same."

---

**4.** Appellee Crow–Frederick did not acquire its property until December of 1987.

Because the issue was neither briefed nor argued, we merely observe that there is a serious question as to whether appellants could get pro rata costs from appellees. When the City deleted the second sentence, it stated that:

"this Ordinance shall take effect from the date of its passage, and that all other ordinances or parts of ordinances inconsistent with the provisions of this Ordinance be and the same are hereby repealed to the extent of such inconsistency."

Ord. G–88–2, approved on March 17, 1988. The City, therefore, would now be unauthorized to collect any costs.

In May of 1986, appellants filed a Petition for Declaratory Judgment, naming appellee Prospect Park, other adjacent landowners,[5] and the City as defendants. In the petition, appellants requested that the trial court declare that § 22–35 "authorizes and requires the City to assess and collect from owners utilizing such improvements the appropriate portion of the cost thereof and reimburse the party who incurred such cost...." Cross-motions for summary judgment were filed. At the hearing of cross-motions, appellees argued that the second sentence of § 22–35 should be declared invalid because it was vague and provided no due process protections. The City's attorney stated the following when the trial judge asked for his input:

"MR. ROBERTS: I just have one. Your Honor, I know a lawyer has an obligation to zealously assert his client's rights, but when I can't assert them without misstating the law, I don't say anything.

"I personally think this ordinance is hopelessly illegal. I don't see how it could possibly be enforced.

"I also feel that if the Court simply says that the ordinance says what it says—if that's the Court's declaration, that that is going to continue, all sorts of problems.

---

5. The other landowners named as defendants were Garcia Organization II, Ltd. and Bluebird Realty. Appellants dismissed the action as to these defendants and added appellee Crow–Frederick, which now owns the property previously owned by the dismissed defendants.

I don't think we even have a justiciable controversy here, because it is just hopelessly illegal, for constitutional reasons, for contractual reasons.

\*     \*     \*     \*     \*     \*

"There's all sorts of legislative background here which I think is irrelevant to the Court's declaration. It isn't even necessary to know that for the Court to read it and say that there's no way that this can either be enforced or implemented.

"So for those reasons, that's the reason I haven't put anything in writing. But I just thoroughly disagree with plaintiff's position here.

"THE COURT: Aren't you glad I asked him the question?"

In its order dated February 24, 1988, the trial court denied appellants' motion for summary judgment, holding that the City was not required to assess and collect costs under the ordinance because the language of the ordinance was permissive, not mandatory.[6] The trial court granted appellee Crow–Frederick's cross-motion for summary judgment, stating that the second sentence of the ordinance was unconstitutional because it had no due process guarantees, such as notice to anyone who might be affected by the section of exactly what improvements made during the last 10 years could result in liability.

—The Ordinance—

We begin our review of this legislation by setting forth the City's attorney's comments at the summary judgment hearing because they shed more light on the meaning of § 22–35 than anything provided by either party:

"MR. ROBERTS: Your Honor, if I might proffer what might have come out had there been a trial, it is simply

---

**6.** The trial court also observed that appellants "made a hasty retreat" at the hearing from their original position as stated in their pleading, which was that the trial court should declare that the City must affirmatively assess, collect and distribute these costs.

developers come into the City and they have to front quite a bit of costs, there's no question about it. And what is said by the City to developers is, you pay it. If there's any way we can get it from people who later come in, we'll be happy to do it and repay you. But the City of Frederick does not build roads, the City of Frederick does not build sewers for new development. Every bit of development that you've seen in this growing town, outside of the downtown which is already settled, is at the cost of the developers, who then pass it on to the subsequent owners of the property, the ultimate owners of the property.

*　　*　　*　　*　　*　　*

"I understand the developer's gripe here, but they've been told numerous time[s] that this is unfortunate; it's the cost of they [sic] being here first.

*　　*　　*　　*　　*　　*

"And I would like to proffer one other piece of information. This ordinance has been around for years and years and years, not just since 1985.

"THE COURT: Now wait a minute. You're saying—

"MR. ROBERTS: It was amended.

"THE COURT: You're saying now the entire ordinance is unconstitutional? Not ordinance, but 22–35 in its entirety is unconstitutional?

"MR. ROBERTS: Yes. 22–35 was created years and years ago when the old general developers' policy was stricken, and that one said—just for historical reference, that said that the developers would get tax breaks—they would front the money for public improvements and they would get subsequent tax breaks. That was taken out, I believe, in the late sixties, and was substituted with what you mostly see in front of you, except it had a five-year cap instead of a ten-year cap.

*　　*　　*　　*　　*　　*

"Let me retract very slightly. The first sentence appears in various other sections of the City code. It is simply a restatement of the City's policy, and just to what I said—

"THE COURT: So I don't understand why that—

"MR. ROBERTS: —Developers pay the rest. No, I'm not suggesting that that by itself is unconstitutional; that's simply the City's position.

"THE COURT: And that, you're only saying the second sentence.

"MR. ROBERTS: But it flows into the second sentence where we're saying, 'But here's the special deal we'll try to give to the first developer.'

"THE COURT: Well, the second sentence is really what we're here on, then, and that's the part that's unconstitutional.

"MR. ROBERTS: That's the one that's incapable of enforcement, in my opinion.

"THE COURT: Is not valid.

"MR. ROBERTS: Yes."

—Due Process Guarantees—

Appellants argue that the second sentence of § 22–35 is constitutional because it was not intended to be the source of any new assessment, but rather was intended to be a subdivision exaction. The distinction between "subdivision exaction" and a "special benefit assessment," argues appellants, controls what substantive and procedural process is due.

We begin by observing that appellants' theories have varied, according to the fortunes of the litigation. Initially, appellants contended that § 22–35 was merely a scheme for special benefit assessments which, according to their reading of the cases, requires little or no due process. This argument ran into difficulty when it was pointed out at the summary judgment level that the *exclusive* mode of special benefit assessment in the City is provided for in § 167 of

the Frederick County Charter; thus, § 22–35 (not contained in § 167) cannot be a special benefit assessment. Appellants have abandoned this position and contend now that § 22–35 is an "ordinary subdivision exaction."

We think it wise to pause at this point in order to provide some definitions. A "special benefit assessment" is a local levy placed upon property in the immediate vicinity of municipal improvements which is necessary to pay for the improvement and is calculated with reference to the special benefit. *Ruel v. Rapid City,* 84 S.D. 79, 167 N.W.2d 541, 544 (1969). A "special exaction," on the other hand, is more in the order of the imposition of a reasonable condition which must be complied with before some advantage such as recordation or lot subdivision is allowed. The developer must comply with reasonable conditions for design, dedication, improvement and restrictive use of the land. There must be a *reasonable nexus* between the exaction and the proposed subdivision. *See Howard County v. JJM, Inc.,* 301 Md. 256, 273–82, 482 A.2d 908 (1984).

The distinction between these two terms is important, appellants argue, because less process is due for special exactions—the ordinance itself, appellants argue, is adequate notice. Because the City used § 22–35 to "exact" from them the money necessary to pay for the improvements, appellants argue that such exaction is also fair and appropriate as to appellees, which are enjoying the benefits of these improvements. Appellants argue that, since § 22–35 is an exaction, as long as there is a *reasonable nexus* between the required improvement and the subdivision development, appellees cannot complain about being denied due process. We disagree and explain.

The fatal flaw in appellants' argument is that the requirements of due process exist no matter *what* classification this ordinance falls into. The allegation that § 22–35 is a vehicle to exact the cost of improvements, with the implication that the costs were exacted here against appellants'

will, is misleading. What then does this ordinance mean and does it provide adequate constitutional protection?

We look to the ordinance itself, since the primary source for determining legislative intent is the language of the statute, given its ordinarily and popularly understood meaning. *Harbor Island Marina, Inc. v. Board of County Commissioners of Calvert County*, 286 Md. 303, 311, 407 A.2d 738 (1979). If the language is plain and free of ambiguity, and has a definite and sensible meaning, such is conclusively presumed to be the intent of the Legislature in enacting the statute. *State v. Preissman*, 22 Md.App. 454, 459, 323 A.2d 637, *cert. denied*, 272 Md. 747 (1974). Extrinsic aids to construction, such as legislative history, should only be resorted to where the statutory language is ambiguous or of doubtful meaning. *Bledsoe v. Bledsoe*, 294 Md. 183, 189, 448 A.2d 353 (1982). "[C]ourts should be wary of inserting words with a view toward making the statute express an intention which is different from its plain meaning." *Montgomery County v. Fulks*, 65 Md.App. 227, 233, 500 A.2d 302 (1985).

█ The first sentence of § 22–35 does not purport on its face to deal with special benefit assessments *or* with "exactions" from subdivision developers. By its terms, the first sentence simply states that, if a developer wishes public facilities to be extended, he must pay for the extension himself. And since the first sentence of § 22–35 does not create any liability for any other person, it has no due process implications. As stated by the City Attorney, the first sentence is simply a restatement of the City's policy that the first to develop bears the cost of the improvements.

The *second* sentence, on the other hand, presents so many constitutional problems that considerable space is required to catalog them. It *suggests* that other persons not identified, who "utilize" the improvements, may be called on to contribute to their cost. It does not identify who these other persons might be or establish any criteria whatsoever to indicate who might be within the universe of

persons subject to liability for contribution. It does not indicate the circumstances under which the City would assess or collect from these persons.

Moreover, there are no standards or criteria on which to judge the level of "utilization" that might subject someone to liability. The second sentence does not provide for any assessment method or scheme. It merely suggests that a collection or reimbursement may be made "if appropriate." It does not provide for any hearing or review of the proposed improvements before the fact; on the contrary, persons who "utilize" improvements as long as ten years later would theoretically be potential targets for assessment at a time when there could be little or no meaningful review. There is no provision for challenging the manner or costs of improvements.

It is useful to illustrate the problems inherent in § 22–35 by imagining how it might be applied. Just how, we wonder, is anyone other than the developer who installed the improvements to have meaningful notice of a potential liability or to evaluate what his liability might be? How, five or ten years later, is a person who has "utilized" these improvements to challenge their cost, or scope, or to evaluate what would be a fair apportionment? The matter is further complicated by the fact that the potential liability rests on utilization. How, for example, would a prospective purchaser evaluate that liability in the total absence of guidelines? Plainly, without meaningful notice and hearing *before* improvements are put in, and without clear standards to determine potential liability, a subsequent "person" who "utilizes" those improvements would lack the means to protest that an assessment is not "appropriate."

In this regard, it is especially relevant that § 22–35 refers to a reimbursement for the cost of improvements to the "party desiring them." It is that party who determines the cost of improvements and their precise nature. He perceives his own needs and generates his own costs. He may

elect to install improvements of a kind or at a level of expense far beyond that which is appropriate to the abutting landowner from whom he will seek contribution. There is no bidding system or other review scheme for control. In contrast, these kinds of controls are always present in the case of a public improvement, done at public expense, which will later be assessed to private landowners under true special benefit legislation such as § 167 of the Frederick City Charter.[7]

In *Ulman v. Mayor of Baltimore*, 72 Md. 587, 592, 20 A. 141, 21 A. 709 (1890), the Court of Appeals invalidated an assessment because there was no provision for notice or hearing for the benefit of the person being assessed prior to the improvement being made. The Court stated:

"Due process of law is not confined to judicial proceedings. The Article of the Constitution is a restraint on the legislative as well as the executive and judicial powers of the government and cannot be so construed as to leave the Legislature free to make any process due process of law by its mere will and pleasure. There would seem to be no doubt that notice, in all such cases as the present, is required to constitute due process of law, and is essential to the assessment." (Citations omitted.)

Later cases have agreed that notice and hearing are minimal requirements in this setting. *See, e.g., Johns Hopkins Club Building Co. of Baltimore City v. Mayor of Baltimore*, 130 Md. 282, 100 A. 298 (1917).

■ The standards for due process have not lessened since the decision in *Ulman*. Due process requires the opportunity to be heard at a meaningful time and in a meaningful manner. The *minimum* due process required where there has been a property interest deprivation is that

---

7. Nevertheless, even with these controls, the Charter quite properly affords the party being assessed an opportunity for hearing *prior to* the construction of the improvements.

the deprivation be preceded by notice and an opportunity for hearing appropriate to the nature of the case. *Vavasori v. Commission on Human Relations,* 65 Md.App. 237, 245, 500 A.2d 307 (1985), *cert. denied,* 305 Md. 419, 504 A.2d 1152 (1986).

■ Appellants argue that it is inequitable for them to bear the entire cost of these improvements. This may well be true. But the question here is *not* a balancing of the equities; rather, it is simply whether the ordinance comports with due process. Appellants assert that this ordinance, because it "unfairly" has required them to pay the entire cost of improvements, violates equal protection. They cite no authority for this proposition. It is doubtful that an equal protection analysis is even applicable here for the simple reason that, if appellees had been first to develop, they too would have had to pay the entire cost. Equal protection requires only that no person should be denied the same protection of the laws enjoyed by other persons similarly situated. Equal protection is not violated by mere classification or discrimination; equal protection prohibits only invidious, or unfair, discrimination. Unless the classification in question is inherently suspect because it discriminates on the basis of race, nationality, alienage, or a fundamental right, it will be upheld if it is rationally related to a legitimate governmental interest. *Jacobs v. Adams,* 66 Md.App. 779, 795–96, 505 A.2d 930 (1986).

In the instant case, appellants have already argued that § 22–35 is valid because its requirements (whatever they are) bear a "reasonable nexus" to subdivision control.

We agree with the trial court that § 22–35 simply does not provide adequate due process protection. We affirm its judgment.

JUDGMENT AFFIRMED.

COSTS TO BE PAID BY APPELLANTS.