573 A.2d 1346

Daniel L. MORRIS et al.

v.

PRINCE GEORGE'S COUNTY, Maryland et al.

No. 121, Sept. Term, 1989.

Court of Appeals of Maryland.

May 31, 1990.

**598**

Karl G. Feissner (Eugene Muskus, both on brief), Marlow Heights, for appellants.

Stephen M. Silvestri (Gary B. Eidelman, Semmes, Bowen & Semmes, Baltimore, and Michael P. Whalen, Michael O. Connaughton, J. Michael Dougherty, Jr., Upper Marlboro, all on brief), for appellees.

J. Joseph Curran, Jr., Atty. Gen., Ralph S. Tyler, Asst. Atty. Gen., Omar Melehy, Staff Atty., Baltimore, amicus curiae, for State of Md.

Argued before ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS and CHASANOW, JJ., and CHARLES E. ORTH, Jr., Associate Judge of the Court of Appeals of Maryland (retired), Specially Assigned.

ADKINS, Judge.

Article 73B, § 32(a), Maryland Code (1957, 1988 Repl.Vol., 1989 Cum.Supp.), declares:

If a member transfers from a retirement or pension system operated on an actuarial basis where accumulated contributions are deducted on all earnable compensation to a retirement or pension system where accumulated contributions are deducted on all earnable compensation, the member shall receive service credit in the system into which the member transfers for and in the amount of benefits accumulated in the system from which the member transfers. The transfer of credit shall occur upon the

deposit, within 1 year of the member's transfer, of the total accumulated contributions to the member's credit in the annuity or other corresponding fund of the system from which the member transferred to the fund of the system into which the member transferred.

The case before us involves two contributory retirement or pension systems, each operated on an actuarial basis. The question is whether, under § 32(a), a transferee carries with him, to the second system, his actual years of service in the first system for the purpose of computing eligibility for retirement, or carries the years of service in the first system merely for the purpose of computing mandatory benefits under the second. Appellants Daniel Morris (Morris) and Eric Olsen (Olsen) contend for the former construction; appellees Prince George's County and Trustees, Prince George's County Police Pension Fund, (collectively the County) argue for the latter. We read the statute in light of the legislative policy favoring "portability" of retirement benefits and conclude that Morris and Olsen are entitled to credit for their actual years of service in the first system in order to compute their eligibility for retirement from the second.

## I.

We summarize the factual backdrop of the controversy. When Morris joined the Prince George's County Police Department in 1982, he had spent 11 years as a deputy sheriff in Prince George's County. During the nine years immediately prior to his move to the police department, he contributed to the Maryland State Retirement System (MSRS). Olsen had spent eight years as a deputy sheriff (during all of which he contributed to MSRS) when he became a Prince George's County policeman in 1984.

In 1987, the Prince George's County Pension Plan Administrative Review Board decided that neither man could count his actual years of service as a deputy sheriff for the purpose of computing the date upon which he would become

eligible for retirement from the police department. That decision stemmed from provisions of the Prince George's County Police Pension Plan that require 20 years of services as a police officer before one becomes eligible for retirement under that plan.[1]

Aggrieved by that ruling, Morris and Olsen sought declaratory relief from the Circuit Court for Prince George's County, but the court agreed with the board.[2] When the two potential retirees appealed to the Court of Special Appeals, we issued a writ of certiorari before any proceedings were had in that court. *Morris v. Prince George's County*, 317 Md. 609, 565 A.2d 1033 (1989).

## II.

Whether Morris and Olsen will be eligible to receive retirement benefits in the last decade of the twentieth century or whether they will have to wait until the early years of the twenty-first depends on the interpretation of § 32. That interpretation also will decide matters of fiscal importance both to individuals like Morris and Olsen and to pension plan administrators. An actuary estimated that "the increase in the present value of benefits under the Police Pension Plan as of July 1, 1988" would be $40,675 for Morris and $36,250 for Olsen, if they prevail on their contention as to dates of eligibility for retirement. Additionally, should appellants succeed, they will become eligible to retire after somewhat shorter total service than if they had remained deputy sheriffs. In that job, eligibility does not occur until after 25 years of service or attainment of the 60th birthday.

---

1. The police pension plan makes it clear that a police officer is a sworn member of the Prince George's County Police Department. As deputy sheriffs, Morris and Olsen did not qualify.

2. The court also rejected claims by Morris and Olsen that they had contracts with the County that would permit them to tack deputy sheriff time to police time for the purpose of retirement eligibility. They did not raise that issue on appeal. It is not before us and we do not address it.

The trial judge avoided all these possibilities by applying what he took to be the plain language of § 32. He noted the use of the phrase "creditable service" in § 11 of Article 73B as referring both to time spent in employment and to the amount of monetary benefits earned. But when he turned to the somewhat similar phrase "service credit" in the critical clause of § 32(a)—"the member shall receive service credit ... for and in the amount of benefits accumulated in the system from which the member transfers"—he said only the monetary benefits meaning could have been intended. He reasoned:

There is nothing in Article 73B to indicate that [the bifurcated use of "creditable service"] was what the legislature had in mind. It is more reasonable to conclude that service credit can refer *either* to a credit of years toward retirement *or* to credit for purposes of determining amount of retirement allowance. Indeed, the latter conclusion squares much more comfortably with a "plain language" reading of Section 32(a). This is especially evident if the "and in the amount of" clause is removed, leaving "member shall receive service credit for ... *benefits* accumulated ...." It is anomalous to suggest that the legislature would intend to give credit for time served but state only that the credit was "for benefits accumulated." Given the dual role of "creditable service" in Section 11, the language "for benefits accumulated" implies that service credit is being used for the purpose, and only for the purpose, of calculating benefits of members in the transferee system [emphasis in original].

The judge concluded that while it "may be more *equitable* to have a member's time credit follow him when he transfers," it was "reasonable to conclude that the Legislature meant what it said in Section 32; that 'benefits' follow a member when he leaves MSRS, but that any credit for time is a matter to be determined elsewhere" [emphasis in original]. He believed that the so-called "plain language" rule of statutory construction not only constrained him to come

to the result he reached, but also prevented him from searching beyond the statutory language in an effort to determine legislative purpose. He wrote: "Where the language of a statute has a plain and unambiguous meaning, that meaning is conclusively presumed to reflect the intention of the legislature in enacting the statute. *Saunders v. [Unemp. Comp. Board],* 188 Md. 677, 53 A.2d 579 (1947)."

The judge violated the normal process of statutory construction by deleting from the statute the words "and in the amount of" in order to support his interpretation. What is more important, he misapplied the "plain language" rule. He also failed to view the statute in the full context of statutory language and in the light of its legislative history. As we shall see, that history displays a legislative purpose that illuminates the language of § 32 and requires it to be read in a way quite different from the trial judge's exegesis.

### III.

There is no doubt that the beginning point of statutory construction is the language of the statute itself. *Brodsky v. Brodsky,* 319 Md. 92, 98, 570 A.2d 1235, 1237 (1990). Obviously, " 'what the legislature has written in an effort to achieve a goal is a natural ingredient of analysis to determine that goal.' " *ANA Towing v. Prince George's Co.,* 314 Md. 711, 715, 552 A.2d 1295, 1297 (1989) (quoting *Kaczorowski v. City of Baltimore,* 309 Md. 505, 513, 525 A.2d 628, 632 (1987)). When we look at the statutory language, we attempt to give effect to all the words in the statute. *Dep't of Assess. & Tax. v. Belcher,* 315 Md. 111, 121, 553 A.2d 691, 696 (1989). And sometimes it may not be necessary to go further than the scrutiny of statutory language, for the language itself may be sufficiently expressive of the legislative purpose or goal. *Davis v. State,* 319 Md. 56, 61, 570 A.2d 855, 858 (1990).

But our endeavor is always to seek out the legislative purpose, the general aim or policy, the ends to be

accomplished, the evils to be redressed by a particular enactment. *Department of Environment v. Showell,* 316 Md. 259, 270, 558 A.2d 391, 396 (1989); *Harford County v. Edgewater,* 316 Md. 389, 397, 558 A.2d 1219, 1223 (1989); *Nelson v. State,* 315 Md. 62, 66, 553 A.2d 667, 669 (1989). In the conduct of that enterprise, we are not limited to study of the statutory language. The plain meaning rule " 'is not a complete, all-sufficient rule for ascertaining a legislative intention....' " *Spratt v. State,* 315 Md. 680, 684, 556 A.2d 667, 669 (1989) (quoting *Darnall v. Connor,* 161 Md. 210, 215, 155 A. 894, 896 (1931)). The "meaning of the plainest language" is controlled by the context in which it appears. *Matter of Diane M.,* 317 Md. 652, 658, 566 A.2d 108, 110 (1989). Thus, we always are free to look at the context within which statutory language appears. *Warfield v. State,* 315 Md. 474, 499–500, 554 A.2d 1238, 1251 (1989); *State v. Runge,* 317 Md. 613, 618, 566 A.2d 88, 90 (1989). Even when the words of a statute carry a definite meaning, we are not "precluded from consulting legislative history as part of the process of determining the legislative purpose or goal" of the law. *Wilde v. Swanson,* 314 Md. 80, 92, 548 A.2d 837, 843 (1988).[3]

## IV.

■ We turn, then, to § 32(a) and the clause upon which ostensibly rides the fate of Morris and Olsen: "the member shall receive service credit in the system into which the member transfers for and in the amount of benefits accumulated in the system from which the member transfers." The critical words are "service credit" and "benefits."

---

**3.** We emphasize that the rigid approach of cases such as *Village Square v. Crow–Frederick,* 77 Md.App. 552, 562, 551 A.2d 471, 475–476 (1989), is not the way to apply the plain meaning rule. Similar approaches are found, *e.g.,* in *Schauder v. Brager,* 303 Md. 140, 145–146, 492 A.2d 630, 633 (1985); *Greer v. Inman,* 79 Md.App. 350, 354, 556 A.2d 1140, 1142 (1989); and *Montgomery County v. Fulks,* 65 Md.App. 227, 233, 500 A.2d 302, 305 (1985).

Neither term is expressly defined in Article 73B. Section 1(10) of that article, however, does contain a definition of "creditable service" that quite clearly has to do with the way in which years of service are computed in order to determine eligibility for retirement. *See also, e.g.,* §§ 9, 85, 115, and 144, all of which deal with the extent to which various periods and types of employment may be applied toward eligibility for retirement. In some of these sections, *e.g.,* § 9(4), the phrase "service credit" is used in reference to years of service: "On request of a member, the board of trustees may modify or correct his *prior service credit* upon proof that, through no fault of the member, the *period of prior service* as stated on the statement of service is found to be incorrect or inaccurate" [emphasis supplied]. Compare this to § 11(1)(a): "Any member may retire ... [when the member] shall have attained the age of [60] or shall have rendered [25] *years of creditable service as an employee*" [emphasis supplied].

It thus appears that "creditable service" and "service credit" may both refer to much the same thing: a period of employment that can be counted towards eligibility for retirement. This period of employment is a benefit. The fact that "creditable service" also is used, as in § 11(3), to determine the amount of a retirement allowance does not restrict the phrase to the area of monetary benefits alone. The trial judge, as we have seen, recognized this dual use of the word but thought that the conjunction of "service credit" and "benefits accumulated" in § 32(a) required him to conclude that "service credit is being used for the purpose, and only for the purpose, of calculating benefits of members in the transferee system." In reaching that decision, we believe he read "benefits" in an unduly narrow fashion.

The County assures us that the judge's concept of "benefits" was correct because statutory terms should be given their ordinary and natural meaning in the absence of legislative definition. *Washington Nat'l Arena v. Comptroller,* 308 Md. 370, 375, 519 A.2d 1277, 1280 (1987). Citing *Web-*

*ster's Third New International Dictionary* 204 (1976), it asserts that the "ordinary and natural meaning" of the word "benefit" is "a cash payment or service provided for under an annuity, pension plan, or insurance policy." The difficulty is that the definition quoted by the County is Webster's definition 3c. Definition 2a shows the word as synonymous with "ADVANTAGE, GOOD"—words that have a considerably broader connotation, and one that is not restricted to monetary payment. *See Random House Dictionary of the English Language* 194 (2d ed. 1987), which defines "benefit" as, among other things:

> 1. something that is advantageous or good; an advantage....
>
> 2. a payment or gift, as one made to help someone or given by a ... public agency.

If time served as a deputy sheriff can be counted towards eligibility for retirement as a police officer, it is certainly "[s]omething that is advantageous ...; an advantage...."

The debate about the meaning of "benefits" is illustrative of the dangers of the mechanical application of dictionary definitions to words in a statute. A dictionary is a starting point in the work of statutory construction, but not necessarily the end. *See* Comment, *Jurisprudence by Webster's: The Role of the Dictionary in Legal Thought,* 39 Mercer L.Rev. 961, 966 (1988). "[D]ictionaries provide possible meanings, not dispositive resolutions," *id.* at 963, because statutes are more than just " 'a series of Webster's definitions strung together.' " *Id.* at 962 (quoting L. Carter, *Reason in Law* 51 (1979)). In other words, while the "ordinary and natural meaning" canon of construction can be helpful when properly used, it cannot always be relied upon to give the complete answer to a problem of interpretation. Words have many meanings. To determine the most appropriate one in given circumstances requires more than a glance at a dictionary. It requires careful study of the context in which the word is used.

"Benefits" is a word used frequently in Article 73B. For example, the captions for §§ 11, 86, 117, and 145 all include

or consist of that word.[4]  It is significant that each of these sections commences, not with a listing of monetary allowances available upon retirement, but with a statement of when one is eligible to retire.  Section 11(1)(a) is typical:

> Any member may retire upon written application to the board of trustees setting forth at what time he desires to be retired, provided that such member at the time so specified for his retirement shall have attained the age of sixty (60) or shall have rendered twenty-five (25) years of creditable service as an employee.

This suggests that the General Assembly in at least some circumstances uses the word "benefits" to comprehend that "advantage" otherwise described as "eligibility to retire."

It is true, of course, that the same word also is used to refer to the allowances available on retirement.  *See, e.g.,* § 49(a) ("The amount of benefit payable on account of the death of an officer ...").  Sometimes the payments are referred to as "allowances" (*e.g.,* § 11(3), (5), and (7)); sometimes as "benefits" (*e.g.,* § 11(4) and (6)).  This demonstrates only that "benefits," like "service credit," may have more than one meaning in Article 73B.  A further look at context, this time in terms of legislative history, will tell us how the terms are used in § 32(a).

Although Maryland had pension or retirement laws before 1941, Chapter 377 of the Acts of that year may be

---

4.  "The captions or headlines of the several sections of this Code which are printed in bold type, and the captions or headlines of the several subsections of this Code which are printed in italics ... are intended as mere catchwords to indicate the contents of the sections and subsections."  Code, 1957 (1987 Repl.Vol. and 1989 Supp.), Art. 1, § 18.  The captions are often the words of the publisher of the Code, not of the legislature, and we do not ordinarily refer to them for purposes of statutory construction.  *City of Baltimore v. Hooper,* 312 Md. 378, 387–388, 539 A.2d 1130, 1135 (1988).  It is otherwise, however, when the General Assembly has itself included the caption in the enacted bill.  *Smelser v. Criterion Ins. Co.,* 293 Md. 384, 386–387 n. 2, 444 A.2d 1024, 1026 n. 2 (1982).  The captions to most of the sections referenced in the text were enacted by the legislature.  For example, what is now § 11 was enacted as § 5 by Ch. 377, Acts of 1941, with the caption "Benefits."  *See also* §§ 117 and 145, as enacted by Chs. 23 and 24, Acts of 1979.

viewed as the actual beginning of MSRS in its present form.[5] *See* Article 73B, § 2, as enacted by Ch. 377. A 1944 report of the Legislative Council discussed the various State and local retirement systems that then existed and canvassed the desirability of allowing various groups of employees to enter the State system. C. Everstine, *Pensions for County and Municipal Employees*, Research Report No. 24 to the Legislative Council (1944). Two years later, the Legislative Council recommended a bill "[t]o provide for reciprocity among the pension systems for State teachers, City of Baltimore teachers, and State employees, [and] to permit members of one system to transfer credits to another." *Legislative Council Report to the General Assembly of 1947* at 7 (1946). This recommendation, it seems, was embodied in Chapter 664, Acts of 1947.[6]

Section 25, as enacted by Chapter 664, was the predecessor to present § 31. This provision authorizes transfers between public retirement or pension systems "operated on an actuarial basis." Chapter 664's § 26 was the forerunner of § 32(a). After providing for notice to the member's original system and a request for refund of contributions, it directed that

[u]pon [the member's] entry into the [transferee] retirement system and the deposit of such accumulated contributions in the annuity savings fund or other corresponding fund [of the transferee system], within one year of the date of such refund, he shall receive prior service credit in the system to which he has transferred for all service rendered prior to January 1, 1926, if any, provided he was in the service at any time during the calendar year 1925, and membership service credit for all continuous

---

5. By virtue of substantial and substantive revision of the retirement laws in 1979, MSRS will eventually be phased out in favor of the newer "Pension System for Employees of the State of Maryland." *See* Art. 73B, § 112 and Chs. 23 and 24, Acts of 1979.

6. Since no draft of the recommended bill is attached to the Legislative Council's report, we cannot be certain of this.

service since January 1, 1926, [or for other specified periods of service].

Chapter 664 also enacted the forerunner of present § 33, former § 27:

Upon becoming a member of the retirement system to which he has transferred, such person shall thereafter pay the rate of contribution applicable to a new entrant at his attained age and be eligible for such pension and annuity as is provided by law in such retirement system, including the credits for previous service in the retirement system from which he has transferred as provided in Section 26 of this sub-title, with the condition, however, that if he retires on a retirement allowance in the system to which he transferred within five years after the transfer, the benefits payable with respect to the service credit in the system from which the transfer was made shall not be greater than those which would have been payable with respect to such service, had he remained in such system.

We see in these provisions an early response to the problem of pension "portability," perhaps foreshadowed by the 1944 report to the Legislative Council, but certainly established by Chapter 664, the title to which described it as "AN ACT ... providing for the transfer without loss of pension benefits by members of any retirement system operated on an actuarial basis under the laws of this State or any political sub-division thereof...." That the word "benefits" is used in its broad sense, to comprehend both monetary benefits and service for eligibility, is consistent with the statutory text. Section 25 allowed transfers between appropriate systems. Section 26 called for "service credit" in the new system—a phrase that, in its context, refers to years of service. And § 27 picked up that meaning when it spoke of "eligib[ility] for such pension and annuity" in the transferee system "including the credits for previous service ... as provided in Section 26...."

The fact that this prior service can be counted for retirement eligibility purposes is underlined by the five-year

proviso at the end of former § 27, and still retained in present § 33. The limitation imposed by that proviso could, of course, be triggered by a transferee's attainment of retirement age shortly after transfer. But it could also be triggered by the tacking of prior service to subsequent service in order to reach eligibility. The legislature, it seems, wanted to guard against excessive benefits induced by either circumstance. Thus, the legislature must have contemplated that either circumstance could occur under its "portability" policy.

The policy of "portability" was recognized, by 1978, as applicable to all members of the State's pension or retirement systems except those serving in the General Assembly. 63 Op.Atty.Gen. 589 (1978). It was well-established and well-known when the 1979 rewriting of Article 73B occurred. And as of that time, it seems plain enough that pension "portability" allowed a transferring individual to bring with him or her not only the earned credits for monetary allowances but also years of service for the purpose of computing eligibility for retirement. That reading is consistent with the statutory language, the legislative history, and the legislative goal of enhancing pension "portability."

The County says the 1979 legislation changed much of that. We do not see it that way. As we have observed, Chapters 23 and 24 of 1979 were basically intended to establish a new system—the Pension System for Employees of the State of Maryland—that eventually would replace the MSRS. This project involved a major overhaul of Article 73B, during the course of which many old sections were amended and many new sections were added. Chapters 23 and 24 amended § 32 (old § 26) thus (deleted material shown in strike-through type and new material in all capital letters):

> Upon [a person's] entry into the [transferee] system and the deposit of such accumulated contributions in the Annuity Savings Fund or other corresponding fund [of the transferee system], within one year of the date of

such refund, he shall receive ~~prior~~ service credit FOR AND IN THE AMOUNT OF BENEFITS in the system to which he has transferred for all service TO HIS CREDIT AS A MEMBER OF THE SYSTEM FROM WHICH HE IS TRANSFERRING ~~rendered prior to January 1, 1926, if any, provided he was in the service at any time during the calendar year 1925 and membership service credit for all continuous service since January 1, 1926~~ ....

While the County claims that deletion of the word "prior," addition of the new language, and deletion of the subsequent references to "membership service credit" confines this language to the subject of monetary benefits alone, this argument is not persuasive.

First, the bills' titles make it plain that their chief purpose is for establishing new pension systems, "providing for transfers from [MSRS] with a return of contributions and the closing of membership into [MSRS]; [and] *providing that no change be made in benefits for members who remain in MSRS ...*" [italics in original]. As we have already seen, under the pre–1979 law, service for purposes of retirement eligibility was treated as a benefit; the language just quoted disavows any intent to change any benefits, including that benefit. Second, § 33, which also deals with the "portability" of accrued years of service, was not amended in a manner consistent with the County's reading of § 32.

Finally, the new language appears intended to do no more than restate the prior language in somewhat different form. "Service credit for and in the amount of benefits ... for all service to his credit" in the transferee system allows credit (as did the pre–1979 law) both for years of service ("service credit for ... benefits ... for all service to his credit") and for monetary benefits ("service credit ... in the amount of benefits ... for all service to his credit"). Both "benefits" and "service credit" are used in the broad sense we previously discussed. This usage gives full effect to all the words in the statute. It also is wholly consistent with the policy favoring pension "portability"; it encourages the

greatest mobility between pension systems, thereby encouraging State employees to seek jobs in which they can use their abilities to the fullest and permitting the State itself more effective use of its personnel.

The continued viability of the "portability" policy has been restated on several occasions since 1979. The Joint Committee on Pensions, in its *1980 Interim Report to the Maryland General Assembly,* for instance, recognized that because, among other things, of the nature of the pension plans created in 1979, "[t]he matter of transfers between Maryland retirement systems was seriously affected...." *1980 Report* at 87. It observed that the consequence of "this inability to transfer service credit from one public jurisdiction to another within Maryland goes into the face of the concept of *portability* that was included in Maryland law as long ago as 1947." *Id.* at 88 [emphasis in original]. It recommended legislation, subsequently enacted as Chapter 394, Acts of 1981, that expanded the kinds of systems between which transfers could be made, provided both employer contributions and employee contributions (if any) accompanied the transfer. *Id.* at 89. *See* § 32(a)(1), (b), (c), and (d), as enacted by Chapter 394. Thus, the legislature made the "portability" concept more broadly applicable than it had been previously.

In 1987, the Joint Committee on Pensions was concerned about certain problems produced by Chapter 394. *Report of the 1987 Interim to the Maryland General Assembly* at 105.[7] To rectify those problems, thereby enhancing "portability," it recommended elimination of the requirement, added in 1981, that the employer's contributions be shifted to the transferee system. *Id.* at 106. That recommendation

---

7. This concern carried over from 1986, in which year the Joint Committee on Pensions' *Report of the 1986 Interim to the Maryland General Assembly* included a more complex measure dealing with the problems produced by Chapter 394, Acts of 1981. *Report* at 69–76. The 1986 proposal did not pass. It recognized the transfer of years of service for eligibility purposes, but would have reduced benefits payable by the transferee system in some circumstances. *Id.* at 69–70.

became Chapter 780, Acts of 1988, and was made retroactive "to all fiscal years beginning on or after July 1, 1981." Ch. 780, Section 2.

Despite such a strong showing of legislative approval of transferring the actual years of service, the County argues that its construction should be adopted because public policy so demands. The contrary reading, it contends, would give Morris and Olsen a windfall and would be expensive for the Prince George's County Police Pension Plan. But what is a windfall may lie much in the eye of the beholder and the legislature has long been aware that expenses may indeed be increased by transfers between systems.

The legislature, as early as 1944, was aware of different pension systems with different kinds of provisions for retirement eligibility and varying monetary allowances. Transfers between systems such as these could produce "windfalls" and extra cost. But the legislature had just these kinds of problems in mind when it adopted, for example, the five-year proviso now in § 33, rather than a restriction on "portability." Nor was it unduly deterred by cost when, in 1988, it repealed the employer contribution transfer provisions it had enacted in 1981.

The State, as amicus curiae, tells us that "[f]or the last 42 years, the [Maryland State Retirement Agency] has credited members of its retirement systems with prior service in other retirement systems for the purpose of computing retirement eligibility." The County does not question the accuracy of the assertion. This demonstrates long-standing administrative construction of § 32(a) and its predecessor statutes by an agency charged with administering them. That construction is entitled to deference, and legislative acquiescence in that interpretation "gives rise to a strong presumption that the interpretation is correct." *Sinai Hosp. v. Dep't of Employment*, 309 Md. 28, 46, 522 A.2d 382, 391 (1987). As recently as its 1990 session, the General Assembly has confirmed its acceptance of that construction. It has done so, moreover, in the context of

transfers between MSRS and local police and firefighter systems.

Six days before this case was argued before us, Delegate Ryan, of Prince George's County, introduced HB 849. The bill, which passed both houses and is now Chapter 609, Acts of 1990, amends § 32 by adding a new subsection (e). In pertinent part, paragraph (2) of new subsection (e) reads as follows:

> Notwithstanding the requirements of subsections (a) through (b) of this section, when a member of a retirement or pension system operated by the State or a political subdivision of the State transfers to a police department or fire department retirement or pension system operated by the State or a political subdivision of the State, the plans, rules, regulations, guidelines, and policies of the retirement or pension system into which the member transfers shall govern in determining:
>
> (i) The years of service necessary to qualify the member for retirement from the retirement or pension system into which the member transfers....

This, of course, is precisely the result for which the County contends. Chapter 609 achieves that result by what is clearly understood to be a change in the law. New subsection (e) applies "[n]otwithstanding the requirements of" subsection (a). The new subsection applies only "to a transfer on or after July 1, 1990." Subsection (e)(1). And both the fiscal note and the committee bill summary contrast the measure's thrust to the provisions of "current law." The fiscal note, for example, explains that under HB 849 (unlike "current law") "a police or fire plan could determine that a year of service being transferred may not be worth a year of service in the police or fire plan." This, it is said, will produce costs saving, because "the transferring participant would have to remain employed longer to be eligible to retire...." The fact that the General Assembly has prospectively adopted the policy advocated by the County is an added indication that current law, the law that applies to Morris and Olsen, is as we have stated it to be.

■ We are convinced that in light of the legislative purpose of enhancing pension portability, § 32(a) permits an individual to carry with him or her accumulated years of service for retirement eligibility when the individual trans- fers from one of the systems described in § 32(a) to another of those systems. We so hold.[8]

## V.

Despite our holding, it may be a little soon for Morris and Olsen to begin preparing their retirement papers. There is no longer a requirement that the employer's contributions to a retirement plan be transferred to the new system when an employee transfers. There is, however, a requirement that employee contributions be transferred. "The transfer of credit" contemplated by § 32(a) "shall occur upon the deposit, within [one] year of the member's transfer, of the total accumulated contributions to the member's credit in the annuity or other corresponding fund of the system from which the member transferred to the fund of the system into which the member transferred."

At oral argument, the appellees noted that the appellants did not comply with the one-year transfer requirement. The parties raised this issue in the trial court. The trial judge, however, did not mention it; he did not have to, because of the basis upon which he disposed of the case. At trial, the County argued that Morris had requested a transfer of funds some 11 months after the beginning of his police employment, but that no funds had ever been trans- ferred. It asserted Olsen had never even requested a

---

8. The County claims that its police pension plan should be given effect in any event, because it was adopted pursuant to a collective bargain- ing agreement. We reject the claim. A provision of an agreement, collective bargaining, or otherwise, that is inconsistent with a statute cannot stand. *Ewing v. Koppers Co.*, 312 Md. 45, 54, 537 A.2d 1173, 1177 (1988) ("parties to a collective bargaining agreement are not free to 'opt out' of legitimate state controls simply by agreeing to imper- missible conditions"); *City of Hagerstown v. Moats*, 81 Md.App. 623, 632, 568 A.2d 1181, 1185 (1990) (LEOBR could not be superseded by collective bargaining agreement).

transfer. Morris and Olsen responded that the funds had not been transferred "[d]ue to controversy and confusion betwee[n] MSRS and the Prince George's County Police System...." They also alleged that the County and the Prince George's County Police Pension Fund were estopped to deny the transfer of funds.

The events surrounding these assertions and counterassertions apparently took place before the repeal, in 1988, of the requirement of transfer of employer contributions. That requirement no longer exists. But, as we have just noted, § 32(a) appears to require transfer of employee contributions. In other words, even though a person transferring to a different pension system under § 32(a) is entitled to transport with him or her years of service for retirement eligibility purposes, there may be a condition that must be satisfied first.

The precise scope of that condition, the person or entity upon whom the duty to satisfy the obligation rests, the effect of noncompliance with it, and the facts that bear on these questions are not before us. They are matters that must be resolved, initially, by the trial court. We vacate its judgment and remand for that purpose.[9]

JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY VACATED. CASE REMANDED TO THAT COURT FOR FURTHER PROCEEDINGS CON-

---

9. In the course of addressing these issues, the trial court may wish to examine HB 687 of 1990 (Ch. 595, Acts of 1990). While the principal object of Chapter 595 seems to involve problems unrelated to those of Morris and Olsen, section 2 of the measure may have some bearing on them. It permits "any member of a retirement or pension system operated on an actuarial basis by the State or a political subdivision of the State [to] make a claim on or before June 30, 1991, for service credit, if the member:

(1) On or before June 30, 1990, transferred from a retirement or pension system operated on an actuarial basis by the State or a political subdivision of the State; and

(2) At the time of the transfer is eligible to claim service credit under Article 73B, § 32 of the Annotated Code of Maryland or under Chapter 327 of the Acts ... of 1986.

SISTENT WITH THIS OPINION. COSTS TO BE PAID BY APPELLEES.