Dear Delegate Cummings:
You have requested our opinion on several questions regarding the transfer of service credits from a State or local retirement or pension system to another State or local retirement or pension system. Your specific questions are as follows:[1]
1. If an individual transfers retirement service credits from one jurisdiction in Maryland to another and in so doing meets the requisite number of years necessary to establish eligibility for benefits in the receiving jurisdiction's retirement system, should that system consider the individual to be vested?
2. May a jurisdiction limit the rights and benefits associated with benefits eligibility based upon the attainment of that status through transferred service credits, rather than those earned exclusively through membership in its retirement system?
3. If an individual who has transferred employment from State government to a political subdivision is later permitted to purchase retirement service earned through previous public employment (for example, from another state, the federal government, or military service) at a rate determined by the individual's new employer, can those service credits be used toward satisfying the five-year employment requirement set forth in § 37-203(e)(3) of the State Personnel and Pensions ("SPP") Article, Maryland Code?
4. Is the reduction in retirement allowances authorized under SPP § 37-203(e)(2) intended to be applied for as long as a beneficiary receives an allowance, or should the reduction cease once it totals the amount that the retiree would have been required to render in retirement contributions, plus interest, had the retiree spent the entirety of the retiree's public employment in the service of the disbursing jurisdiction?
Our opinion is as follows:
1. Under SPP § 37-203(b) and (e), an individual may apply his or her accumulated years of service for purposes of retirement eligibility in the new retirement system.
2. The new retirement system may not limit the extent to which a transferring member may use the years of service in the previous system to become eligible for benefits (or vest) in the new system, but instead is required to take into account the years of service when determining eligibility for benefits.
3. A member may not purchase service credits to avoid the reduction in benefits under SPP § 37-203(e)(3) if the member retires within five years after transferring to the new retirement system.
4. SPP § 37-203(e)(2) directs the new retirement system to reduce the retirement allowance of a retiree who transferred from a non-contributory to a contributory system at retirement by the actuarial equivalent of the accumulated contributions plus interest that would have been made by the member under the new system. Accordingly, if the actuarial assumptions adopted by the new system are inconsistent with the retiree's actual experience, the amount deducted may exceed (or be less than) the contributions with interest that would have been deducted by the new system. While this requirement may lead to burdens in individual cases, it is a lawful exercise of the General Assembly's near-plenary power to regulate public pensions.
 I Background
Title 37 of the State Personnel and Pensions Article controls the transferability of service credits from one public retirement system operated under the laws of the State or a political subdivision to another.[2] SPP §§ 37-202 and 37-203 generally provide for portability of pension benefits when an employee transfers between retirement systems.[3]
Transfer of pension benefits has been a part of Maryland pension law since 1947. The 1947 enactment guaranteed that, upon transfer, the member would "receive membership service credit for all continuous service credit since January 1, 1926 . . . ." Sections 25 and 26 of Chapter 664, Laws of Maryland 1947. The General Assembly made its intention clear in the preamble to Chapter 664, which described the law as "providing for the transfer without loss of pension benefits by members of any retirement system operated on an actuarial basis under the laws of this State or any political subdivision thereof to any other retirement system operated on an actuarial basis under the laws of this State or any political subdivision." (Emphasis added.)
In 1981, upon the recommendation of the Joint Committee on Pensions, the General Assembly first extended the transfer provisions to permit transfer without loss of pension benefits between all types of retirement systems. See Chapter 394 of the Laws of Maryland 1981. "Thus, the legislature made the `portability' concept more broadly applicable than it had been previously." Morris v. Prince George's County, 319 Md. 597, 612,573 A.2d 1346 (1990).[4] In addition, on the recommendation of the Joint Committee on Pensions, the statute included a requirement that employer contributions accompany the transferring members. The stated purpose of this recommendation was "[t]o protect employers who have different benefit structures and funding levels . . . ." 1980 Interim Report to the General Assembly at 89.
In 1986, the transfer provisions were again amended. While the 1981 amendment had an effective date of July 1, 1981, and thus applied to all transfers between retirement systems on or after that date, Chapter 327 of the Laws of Maryland 1986 retroactively permitted transfer of service credit when a member transferred on or after January 1, 1980 from a contributory to a noncontributory system. Moreover, Chapter 327 provided that members who transferred between January 1, 1980 and July 1, 1981 were entitled to receive the credit if they filed a claim on or before July 1, 1987. Although the 1986 enactment did not alter the requirement that employer contributions accompany the transferring member, it retroactively provided relief to certain transferring members and therefore furthered the legislative policy in favor of pension portability.
The Joint Committee on Pensions, having reconsidered the transfer provisions during the 1987 interim, recommended legislation to repeal, retroactively to July 1, 1981, the requirement that employer contributions accompany the member at the time of transfer. The Joint Committee's recommendation was based on its findings that the requirement was complicated to administer, burdensome, not justified by the expense, and in fact had not been implemented. Joint Committee on Pensions, 1987 Interim Report to the General Assembly at 105-06. The General Assembly enacted this recommendation in Chapter 780 of the Laws of Maryland 1988.
In 1990, the General Assembly created a special exception to the policy of portability as it applied to an employee who transfers to a retirement system for a police or fire department. Chapter 609 of the Laws of Maryland 1990. Under SPP § 37-204, a retirement system for a police or fire department may determine the years of service necessary to qualify for a pension in the new system and the years of service and amount of retirement benefits to be credited by the new system for the years of service and benefits earned under the previous system. For example, unlike the policy of portability implemented under the general rules, "a police or fire plan could determine that a year of service being transferred may not be worth a year of service in the police or fire plan." Fiscal Note to House Bill 849.
After the 1990 amendment for police and fire plans, there have been no other substantive amendments to the policy of portability implemented in Title 37.[5] The general right of transfer is now set out in SPP § 37-202(a):
 A member of a State or local retirement or pension system may transfer service credit attained as a result of that membership to another State or local retirement or pension system if the member, without incurring a break in employment, accepts employment or office that:
 (1) requires or allows the member to participate in the new system; and
 (2) does not allow the member to continue to accrue benefits in the previous system.
The language of the statute and its legislative history tell us that, with the exception applicable to retirement systems for a police or fire department, service credit is meant to be transferable. Morris v. Prince George's County, 319 Md. at 612; 76Opinions of the Attorney General ___ [Opinion No. 91-024 (June 13, 1991)].
 II Transfer of Service Credit
Your first and second questions involve analysis of the extent to which service credit is transferable to the retirement system of the new employer. Since SPP § 37-203(b) deals with the transfer of service credit to any retirement plan other than a retirement plan for a police or fire department, it is the starting point for our analysis: "[A]n individual who transfers service credit under this title shall receive service credit in the new system in the amount of service credit accumulated under the previous system." SPP § 37-203(e) further provides: "[A]fter an individual transfers service credit to a new system under this title, the individual":
 (i) shall pay the rate of contribution applicable to a member of the new system; and
 (ii) is eligible for a pension and annuity as provided under the new system, determined by taking into account the transferred service.
The language of the statute leaves little room for doubt as to its effect. When a member changes employment and transfers membership to a new retirement system, the member's service credit while a member of the old retirement system is transferable to the new system and is used to determine eligibility for a pension under the new system. The term "service credit" in SPP § 37-302(b) means "a period of employment that can be counted toward eligibility for retirement." Morris, 319 Md. at 605. Indeed, inMorris, the Court of Appeals was "convinced that in light of the legislative purpose enhancing pension portability, § 32(a) [now SPP § 37-202] permits an individual to carry with him or her accumulated years of service for retirement eligibility when the individual transfers from one of the systems described in § 32(a) to another of those system."319 Md. at 615.[6]
Nor may the new retirement system condition or otherwise limit the extent to which an individual may use the transferred service credit to become eligible for benefits in the new retirement system — that is, to vest in the new system.[7]
Instead, an individual's eligibility for benefits is "determined by taking into account the transferred service." SPP § 37-203(e)(1)(ii). Only if the General Assembly changes the law as it did in 1990, when it enacted the special exception applicable to an employee's transfer to a retirement system for a police or fire department, may the new retirement system to which an individual transfers determine that a year of service being transferred is not worth a year of service in the new plan.
 III Five-Year Employment Requirement
You next ask whether an individual who transfers to a retirement system may purchase service credits and then use the purchased service to satisfy the five-year requirement under SPP § 37-203(e)(3). This provision is as follows:
 If an individual retires within 5 years after transferring into a new system, the benefits payable with respect to the transferred service may not be greater than the benefits that would have been payable by the previous system with respect to that service if the individual had remained in the previous system.
Under the plain language of the statute, an individual's benefits are subject to reduction on retirement "within 5 years after transferring into a new system." Thus, the limitation on receipt of unreduced benefits applies during the five-year period that commences on transfer into a new retirement system. Moreover, the five-year period is not measured by reference to the member's "creditable service" or "service credit" in the new retirement system. Instead, under the plain language of the statute, a reduced benefit is payable during the five-year period that commences on employment.
The Court of Appeals concluded that the purpose of the five-year proviso is "to guard against excessive benefits induced" if a transferee attains retirement age shortly after the transfer or if tacking the transferee's prior service to the transferee's subsequent service results in eligibility for benefits. Morris,319 Md. at 610. In our opinion, this legislative purpose would be undermined if a member were able to purchase service shortly after the transfer and receive an unreduced benefit.
 IV Reduction of Benefit by a Member's Accumulated Contributions
Your fourth question involves analysis of SPP § 37-203(e)(2), which provides, in pertinent part, as follows:
 [I]f an individual transfers from a noncontributory system to a contributory system, on retirement the individual's retirement allowance shall be reduced by the actuarial equivalent of the accumulated contributions that would have been deducted if the individual had earned the transferred service credit under the new system, including interest on those contributions.
For brevity's sake, we shall call this calculation of forgone deductions the "Deficiency."
You advise that, under current practice, the offset is applied without regard to a time or monetary limit; therefore, the offset may require the individual retiree (and survivor) to pay more than the Deficiency. In short, your inquiry requires that we focus on whether retirement systems are properly computing the amount of the reduction, particularly when the calculation may result in a windfall to the new retirement system at the expense of the member.
The General Assembly has directed each retirement system to recover the Deficiency by determining the "actuarial equivalent" of the Deficiency at retirement. Actuarial equivalence is a function of the actuarial assumptions adopted by a retirement system — that is, the assumptions respecting interest rates, salary increases, rates of withdrawal, mortality, disablement, and retirement.[8] It therefore follows that the retiree's actual experience or the retirement system's actual return on investment is not determinative of the amount of the reduction.
As you have pointed out, one practical effect of determining the amount of the reduction by reference to actuarial equivalence is that if a retiree lives longer than the actuary's assumption, the reduction will exceed the actual amount of the Deficiency.[9] In your example, there is an apparent windfall to the new retirement system. On the other hand, if the retiree dies before the retiree's actuarial life expectancy, then the retirement system does not receive the entire amount due.[10]
As the Court of Appeals noted in Morris, "what is a windfall may lie much in the eye of the beholder and the legislature has long been aware that expenses may indeed by increased by transfers between systems." 319 Md. at 163. Indeed, the Court explicitly rejected the argument that "public policy" demands a reading of transfer provisions so as minimize the costs borne by the member's new employer. Id. Similarly, we conclude that the potential windfall accruing to the new retirement system does not justify interpreting SPP § 37-204(e)(2) to fix the duration of the reduction or its amount based on the actual experience of the retiree.[11]
 V Conclusions
In summary, our opinion is as follows:
An individual who transfers directly from one retirement system to another may apply his or her accumulated years of service for purposes of retirement eligibility in the new retirement system. Moreover, the new retirement system may not limit the extent to which a transferring member may use the years of service in the previous system to become eligible for benefits (or vest) in the new system, but instead is required to take into account the years of service when determining eligibility for benefits.
However, a member may not purchase service credits to avoid a reduction in benefits if the member retires within five years after transferring to the new retirement system. Finally, the new retirement system must reduce the retirement allowance of a retiree who transferred from a non-contributory to a contributory system at retirement by the actuarial equivalent of the accumulated contributions plus interest that would have been made by the member under the new system.
Very truly yours,
 J. Joseph Curran, Jr. Attorney General
 Harriet B. Granet Assistant Attorney General
_________________________ Jack Schwartz Chief Counsel Opinions Advice
[1] The following members of the General Assembly subsequently requested that we consider some or all of these same questions: Senators McCabe and Munson and Delegates Kach, Montague, and Nathan-Pulliam.
[2] In this opinion, we use the term "retirement system" to refer to any State or local retirement or pension system operated under the laws of the State or any political subdivision of the State.
[3] The policy of pension portability applies to all members of a retirement system operated on an actuarial basis except those employees who are members of the Judges' Retirement System or the Legislative Retirement Plan. SPP § 37-201(b). In addition, SPP § 37-204 provides special rules applicable to an individual who transfers to a retirement system for a police department or fire department. These exceptions to the policy of pension portability have no bearing on your inquiry and, therefore, are not discussed in this opinion.
[4] Although portability had been the legislative policy prior to the 1981 amendment, it became an issue only after Chapters 23 and 24 of the Laws of Maryland 1979 created the noncontributory pension systems. The Joint Committee on Pensions concluded that these new systems "seriously affected" transfer of credit. 1980 Interim Report to the General Assembly at 87. In this report, the Joint Committee observed that members could not transfer service credit from a contributory to a noncontributory system and concluded that "this inability to transfer service credit from one public jurisdiction to another within Maryland flies in the face of the concept of portability that was included in Maryland law as long ago as 1947." 1980 Report at 88. Seealso Opinion No. 80-053 (August 11, 1980) (unpublished).
[5] The pension article was revised without substantive change in 1992 by enactment of Chapter 131 of the Laws of Maryland 1992 and again in 1994 by enactment of Chapter 6 of the Laws of Maryland 1994.
[6] The 1994 recodification of the pension laws substituted the reference to the transfer of "service credit in the new system in the amount of service credit accumulated under the previous system" for the reference in former Article 73B, § 1-401(b) to the transfer of "service credit for an in the amount of benefits accumulated in the system from which the member transfers." Revisor's Note. The section is new language derived without substantive change from the source law. It therefore follows that the Court of Appeals interpretation of the term "service credit" in Morris continues to apply. Hence, on transfer an individual may tack the individual's prior service to subsequent service to reach the points of vesting in the new system.
[7] The statute itself imposes certain benefit limits when the individual transfers within five years of retirement. See
Part III below.
[8] Each retirement system may adopt different actuarial assumptions. For the several systems administered by the Board of Trustees of the State Retirement and Pension System, every five years, the Board of Trustees' actuary conducts an actuarial investigation "into the compensation, mortality, and service experience of the participants of each of the several systems." SPP § 21-125(c)(1)(i). Based on that review, the Board of Trustees is directed to "adopt the actuarial assumptions for each of the several systems . . . ." SPP § 21-125(c)(2)(ii). Under these provisions of the law, the Board of Trustees most recently reviewed the actuarial assumptions for the several State systems as of June 30, 1992.
[9] Another effect of using actuarial equivalence to determine the amount of the Deficiency is that the new retirement system may not recover the actual amount due if the system's investment performance does not meet the interest rate assumptions adopted by the retirement system.
[10] Nor is a retirement system prohibited from computing the reduction over the joint lifetimes of the retiree and the retiree's beneficiary if the reduction is actuarially equivalent to the Deficiency. For example, in the State systems, at retirement a member may elect to receive a joint and survivor annuity under SPP § 21-403(b) and (c). These optional allowances are the "actuarial equivalent" of the allowance payable to the retiree during the retiree's lifetime. SPP § 21-402(a). Consequently, if a retiree selects a joint and survivor allowance, a retirement system properly reduces the retirement allowance by the Deficiency amount over the joint lifetimes of the retiree and the beneficiary.
[11] Given the legitimate interests served by the statutory requirement, we have no doubt that it would survive any challenge on due process or equal protection grounds.
 *Page 207