610 A.2d 770

**Sada D. CHERNICK**

v.

**Sidney S. CHERNICK.**

**No. 112, Sept. Term, 1991.**

Court of Appeals of Maryland.

Aug. 21, 1992.

472

Lowell J. Gordon, Rockville, for petitioner.

James G. Nolan (Witt, Nolan & Bindeman, on brief), Washington, D.C., for respondent.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW, KARWACKI and ROBERT M. BELL, JJ.

CHASANOW, Judge.

Sada and Sidney Chernick were married in 1947 and divorced in 1977. In the divorce decree, Mr. Chernick was ordered to pay Ms. Chernick alimony in the amount of $950 a month. Mr. Chernick was employed at the time of the decree, while Ms. Chernick was unemployed and had no income or assets from which to support herself. On July 16, 1987, Mr. Chernick filed a motion to terminate alimony. In the motion, which also contained a request for counsel fees, he contended that there had been a substantial change in the parties' circumstances in the ten years since the divorce decree. Mr. Chernick had retired and Ms. Chernick's financial condition had substantially improved.

At the time the motion to terminate alimony was filed, Ms. Chernick was an associate professor of mathematics at Manatee Community College in Florida. Upon receiving Mr. Chernick's motion, Ms. Chernick contacted Harvey B. Steinberg, the attorney in Maryland who had represented

her in the divorce proceedings. Mr. Steinberg advised Ms. Chernick that alimony might be modified downward or even terminated due to the parties' change in circumstances. He discussed settlement with her. Ms. Chernick, who was planning to retire in the near future, was amenable to settlement, but wanted a reservation, rather than a termination, of alimony.

Mr. Chernick's attorney, James G. Nolan, scheduled a telephone deposition of Ms. Chernick for November 3, 1987 in preparation for the hearing on Mr. Chernick's motion to terminate alimony. Before the deposition began, counsel for the parties discussed settlement and reached an agreement that would resolve the entire matter. The agreement provided that Mr. Chernick's obligation to pay alimony would be terminated as of October 31, 1987, but that Ms. Chernick's future entitlement to alimony would be reserved. Mr. Chernick also agreed not to seek any attorney's fees in the matter. Mr. Steinberg telephoned Ms. Chernick and explained the provisions of the agreement to her. Ms. Chernick approved the agreement. Since the parties had reached an agreement settling the matter, no deposition was taken. Additionally, the Master's office was notified of the settlement, and the hearing on Mr. Chernick's motion to terminate alimony scheduled for November 25, 1987 was removed from the Master's calendar.

After obtaining the consent and authorization of both parties to enter into the agreement, counsel drafted and signed a proposed "consent order" embodying the terms of the agreement. The proposed "consent order" was mailed to the Circuit Court for Montgomery County. It was received by the Circuit Court on November 16, 1987, as evidenced by the clerk's stamp on the reverse side of the first page. The proposed "consent order" was placed in the court file, where it remained unsigned, apparently never having been submitted to a judge.

Ms. Chernick subsequently retained a new attorney, Lowell J. Gordon, and he entered his appearance on December 1, 1987. On the same day, Mr. Gordon filed a line advising

the court that Ms. Chernick had withdrawn her consent to the proposed "consent order."

No further court action was taken by either party until February 15, 1989, when Ms. Chernick filed a motion to cite Mr. Chernick in contempt of court for his failure to pay alimony as provided in the divorce decree. Ms. Chernick alleged that, since October 1, 1987, Mr. Chernick had refused to make any alimony payments to her. Mr. Chernick opposed the motion for contempt, citing the parties' agreement as a defense. A hearing on the matter was subsequently held before a Domestic Relations Master at which time testimony was taken from the parties and Ms. Chernick's former counsel, Mr. Steinberg. Before the hearing, the parties agreed to limit the issues to the one now before this Court—"whether or not a proposed consent order that had been executed by counsel for both parties in November, 1987 ... was binding on" Ms. Chernick and could be signed by the court. The Master filed a report and recommendations in which he determined that there was a binding agreement, with valid consideration, reached by the parties in settlement of the issue of alimony; he recommended that the agreement be enforced by the court *nunc pro tunc* and that the "consent order" be signed. The Master opined in his report and recommendations:

"The question presented in this case is whether or not the parties entered into a valid modification agreement which is binding on them even though it was never signed by the Court. The Order was submitted, but apparently [never] reached a judge for signature. However, it is clear that Mr. Steinberg had the authority of Mrs. Chernick to enter into the agreement and did in fact execute it on her behalf. As has been stated in other jurisdictions, the Court may adopt any agreement of the parties and modify its decree to conform to the agreement if it deems it appropriate.

Both parties submitted memoranda to the Master for review as to the legal ramifications of such an agreement. The Master is satisfied that the Court may adopt the agreement of the parties and feels that this is a case in

which it should do so. The parties negotiated at arm's length and reached an agreement which was satisfactory to both of them at the time. Mrs. Chernick agreed to terminate alimony, because at that time her income was more than her expenses, and Mr. Chernick agreed to a reservation of alimony in the event Mrs. Chernick retired and was in need of additional assistance.

The Master feels that this was a binding agreement with valid consideration and should be enforced by the Court Nunc Pro Tunc.

Mrs. Chernick can still file a Petition for Modification if in fact it is determined that she is in need of assistance from Mr. Chernick. This was fully explained to her and the Master feels that she was fully cognizant of the ramifications of her agreement.

Many jurisdictions have ruled that a husband and wife are authorized to enter into contracts resolving their property rights and that those agreements are valid even though they are not submitted to a court for approval.

For all of these reasons the Master feels that both parties have been protected in this situation. First of all, Mr. Chernick would have been entitled to a cessation of alimony since at the time of his legitimate retirement he was earning less money than at the time of the divorce. And also at this time Mrs. Chernick was earning more money than her monthly expenses, so that for either of those reasons, he would have been entitled to a modification. Secondly, Mrs. Chernick is protected by the reservation of alimony and can seek additional support from Mr. Chernick whenever that is deemed necessary." (citations omitted)

The Master further determined that Mr. Chernick was not in arrears in alimony payments and was not in contempt of court.

■ Ms. Chernick filed exceptions to the Master's report and recommendations and Mr. Chernick filed an objection to the exceptions. The matter was heard in the Circuit Court for Montgomery County. The court issued three orders in

which it denied Ms. Chernick's exceptions, adopted the Master's report and recommendations, and signed the previously filed proposed "consent order." Ms. Chernick filed an appeal[1] in the Court of Special Appeals, and in an unreported opinion, the Court of Special Appeals affirmed the three orders entered by the Circuit Court for Montgomery County. This Court then granted Ms. Chernick's petition for certiorari.

On appeal, Ms. Chernick claims that the circuit court erred in issuing the aforementioned orders. She advances three arguments to support her position. She contends that the agreement between the parties was not a valid contract because the parties did not intend that the agreement create contractual obligations between them and, even if there was mutual assent, the contract lacked consideration. Ms. Chernick further contends that, although the proposed consent judgment was filed with the court, she had the right to withdraw her consent before the judgment was actually signed by a judge. Therefore, she contends the judge had no authority to sign the "consent order." Finally, she claims that Mr. Chernick abandoned his motion to terminate alimony because of his inaction after Ms. Chernick withdrew her consent to the proposed "consent order." We will take each of these contentions in turn.

## I. VALIDITY OF AGREEMENT/CAPACITY TO CONTRACT

The issue in the instant case is not whether the agreement of the parties could have been adopted by the court

---

1. Our prior cases have made clear that generally no appeal will lie from a consent judgment. *Globe American v. Chung,* 322 Md. 713, 589 A.2d 956 (1991). An appeal will lie from a court's decision to grant or refuse to vacate a "consent judgment" where it was contended below that the "consent judgment" was not, in fact, a consent judgment because the consent was coerced, the judgment exceeded the scope of consent, or for other reasons there was never any valid consent. *See Long v. Runyeon,* 285 Md. 425, 429–30, 403 A.2d 785, 788 (1979); *Mercantile Trust Co. v. Schloss,* 165 Md. 18, 24–25, 166 A. 599, 601–02 (1933).

and incorporated into a new order modifying the alimony award in the divorce decree. Instead, based on the issue as submitted to the Master and decided by the circuit court, we must determine whether the "consent order" which was submitted by the parties in November, 1987 was properly signed by the court. We first should point out that the "consent order" submitted in November, 1987 was actually a proposed consent judgment. " 'Judgment' means any order of court final in its nature entered pursuant to these rules." Maryland Rule 1–202(m). That definition of judgment now includes equity decrees. We need not address what the court's function is in scrutinizing submitted consent judgments that terminate the case, modify an existing judgment, or maintain jurisdiction over the case and may later require the use of the court's contempt power to enforce the judgment; no such issue is raised in the instant case. *See, e.g.,* Thomas M. Mengler, *Consent Decree Paradigms: Models Without Meaning,* 29 B.C.L.Rev. 291 (1988).

■ Consent judgments or decrees are essentially agreements entered into by the parties which must be endorsed by the court. They have attributes of both contracts and judicial decrees. *Local Number 93 v. City of Cleveland,* 478 U.S. 501, 519, 106 S.Ct. 3063, 3073, 92 L.Ed.2d 405, 421 (1986).

Ms. Chernick's first challenge to the consent judgment was that there was never a binding contract to settle the instant litigation. She makes no claim of duress, undue influence, or that there was no meeting of the minds, but contends that the agreement did not contain some of the essential elements of a contract. We agree with Ms. Chernick's underlying premise that if there was no binding contract Ms. Chernick could withdraw her consent to settle prior to the consent order being signed.

■ In order to form a contract, both parties must have the power to enter into an agreement and must consent to the agreement being made. Ms. Chernick contends that the agreement is not valid because the parties

lack the power to modify the existing divorce decree. While parties do not have the ability to independently modify an existing court decree, they do have the power to make a valid agreement to modify the decree subject to the court's approval. An agreement made subject to the court's approval is analogous to a contract subject to a condition. "A condition is an event, not certain to occur, which must occur, unless its nonoccurrence is excused, before performance under a contract becomes due." Restatement (Second) Contracts § 224 (1981). Even when a condition must occur before performance is due, the contract is no less binding than one made without a condition. Consequently, if parties stipulate to terms embodied in a proposed consent order, the fact that a court must approve and sign the order does not affect the parties' ability to reach a valid agreement.

In the case at bar, Mr. and Ms. Chernick agreed to modify their existing divorce decree subject to the court's approval and filed a written stipulation in the form of a proposed consent judgment. The fact that Mr. and Ms. Chernick filed the proposed consent judgment indicates that they were aware that they were settling the controversy between them, subject only to the court's approval. The proposed consent judgment embodied the terms of the agreement between the parties and was signed by the attorneys for both parties; it left a blank line for the court's signature. The parties' conduct is further evidence that they intended for the agreement to be a final settlement of their dispute in that the deposition and the hearing on Mr. Chernick's motion to terminate alimony were cancelled after the agreement was reached.

"It is fundamental that in order for a contract to be binding it must be supported by consideration." *Beall v. Beall,* 291 Md. 224, 229, 434 A.2d 1015, 1018 (1981). Ms. Chernick contends that the settlement agreement in the instant case was not a binding contract because it lacked consideration. Consideration necessitates that "a performance or a return promise must be bargained for." Restate-

ment (Second) of Contracts § 71 (1981). A performance is bargained for if "it is sought by the promisor in exchange for his promise and is given by the promisee in exchange for that promise." *Id.* Forbearance to exercise a right or pursue a claim, or an agreement to forbear, constitutes sufficient consideration to support a promise or agreement. *Erie Ins. Exch. v. Calvert Fire Ins.*, 253 Md. 385, 389, 252 A.2d 840, 842 (1969).

In the case at bar, Mr. and Ms. Chernick provided valid consideration for their agreement by bargaining for the reciprocal promises made to one another. Ms. Chernick sought a reservation of alimony and, in exchange for the reservation, she promised not to pursue her right to the alimony awarded in the divorce decree. Mr. Chernick sought a permanent termination of alimony and, in exchange for Ms. Chernick's promise to presently forego alimony, he promised to allow her to reserve an entitlement to alimony in the future should her circumstances change. A reservation of alimony is a benefit that Ms. Chernick would have had no assurance of receiving if the alimony issue were litigated. In *Turrisi v. Sanzaro*, 308 Md. 515, 520 A.2d 1080 (1987), we examined the circumstances in which a reservation of alimony may be appropriate. While the power to reserve alimony exists, "it would not be appropriate to reserve simply because there may be some vague future expectation of circumstances that might show a basis for alimony." *Id.* at 528–29, 520 A.2d at 1087. Thus, the power to reserve is within the court's discretion, and it is uncertain whether Ms. Chernick would have been able to achieve her goal.

Mr. Chernick also relinquished a legal right to seek counsel fees in exchange for the termination of alimony. An award of counsel fees may be authorized in a proceeding involving a modification of alimony. Maryland Code (1984, 1991 Repl. Vol.), Family Law Article, § 11–110. The court considers the financial resources of each party and whether there was a substantial justification for prosecuting or defending the proceeding. Indeed, the Master found that Mr. Chernick was entitled to a modification of the original

divorce decree because he was retired and Ms. Chernick's earnings exceeded her expenses. As Mr. Chernick's financial resources were limited in comparison to Ms. Chernick's, it appears to us also that he had justification for seeking a termination of alimony and might have been awarded counsel fees. Consequently, we find that the Chernicks' agreement was supported by consideration and that they were bound by their contract unless the court decided not to approve it.

## II. RIGHT TO WITHDRAW CONSENT

Ms. Chernick claims that she was not bound by the proposed consent judgment which had been signed by the parties and submitted to the court for its approval. She contends that she has the right to withdraw her consent at any time prior to the court's signing of the proposed consent judgment. The first requisite for a consent judgment is that there must be either continuing consent or a binding consensual contract to settle the case. In the instant case, as we have previously discussed, there was a binding contract. A party's decision to renege on an agreement should not provide any greater ground to rescind a contract of settlement than it would any other contract. *See Petty v. Timken Corp.*, 849 F.2d 130 (4th Cir.1988); *Lyles v. Commercial Lovelace Motor Freight, Inc.*, 684 F.2d 501 (7th Cir.1982).

It is well established in Maryland that a valid settlement agreement between the parties is binding upon them. *Clark v. Elza*, 286 Md. 208, 406 A.2d 922 (1979). As early as 1855, this Court has made it clear that settlement agreements are desirable and should be binding and enforceable. In *McClellan v. Kennedy*, 8 Md. 230 (1855), we said:

> " 'If compromises are otherwise unobjectionable they will be binding, and the right will not prevail against the agreement of the parties, for the right must always be on one side or the other, and there would be an end of compromises if they might be overthrown upon any subsequent ascertainment of right contrary thereto.' The doctrine of compromises rests on this foundation."

*Id.* at 248, *quoting* 1 *Story's, Commentaries on Equity* §§ 131–32.

In *Clark,* the plaintiffs filed suit alleging that the defendants were responsible for their injuries in an automobile accident. Settlement negotiations began, a figure of $9500 was verbally agreed upon, the trial judge was notified of the settlement, and the case was removed from the trial calendar. Subsequently, the plaintiffs refused to sign a release and an order of satisfaction and advised the court that they were no longer willing to settle. The defendants filed a "Motion to Enforce Settlement" and a hearing was held. The plaintiffs argued that the settlement was not binding upon them because it was an executory accord and was not enforceable. The trial court agreed and declined to enforce the settlement—it found that the agreement was an executory accord and was not binding, rather than a substitute contract which would have been binding.

We reversed the trial court on appeal and explained the nature and effect of the parties' settlement agreement. We stated that an executory accord is an "agreement for the future discharge of an existing claim by a substituted performance." *Clark,* 286 Md. at 214, 406 A.2d at 925 (quoting 6 *Corbin on Contracts,* § 1268 (1962)). An executory accord holds the rights and duties of the parties in abeyance until performance of the settlement. A substitute contract, however, replaces the old agreement with a new agreement at the time the new agreement is made and immediately discharges the original claim. Traditionally, an executory accord had been held to be unenforceable and no defense against a suit on the prior claim. We held, in accordance with the modern view and in our opinion the better view, that the settlement was enforceable by the court. In a statement equally applicable to the instant case, Judge Eldridge, writing for the Court, noted:

> "As long as the basic requirements to form a contract are present, there is no reason to treat such a settlement agreement differently than other contracts which are

binding. This is consistent with the public policy dictating that courts should 'look with favor upon the compromise or settlement of law suits in the interest of efficient and economical administration of justice and the lessening of friction and acrimony.' "

*Clark,* 286 Md. at 219, 406 A.2d at 928, quoting *Chertkof v. Harry C. Weiskittel Co.,* 251 Md. 544, 550, 248 A.2d 373, 377 (1968), *cert. denied,* 394 U.S. 974, 89 S.Ct. 1467, 22 L.Ed.2d 754 (1969).

To support her position that she may withdraw her consent at any time before a judge actually signs the consent judgment, Ms. Chernick relies heavily on *Dorsey v. Wroten,* 35 Md.App. 359, 370 A.2d 577 (1977). Without expressly approving or disapproving its holding, we find *Dorsey* inapposite. In *Dorsey,* the parties had entered into a contract for the sale of a parcel of land. A dispute arose between the parties and, as a result of this conflict, a complaint for specific performance was filed and the case was set for trial. When the case was called, counsel requested a "settlement type conference" in the judge's chambers. A settlement agreement was reached and the judge requested that a consent decree be prepared and presented to him. Later that day, Dorsey's counsel informed the judge that Dorsey no longer agreed to the settlement terms and would not sign the proposed consent judgment. The judge considered the matter settled and signed a "consent" decree.

The Court of Special Appeals, in reversing the trial court, stated that "even though [Dorsey] orally agreed to a settlement agreement, it is obvious that he withdrew that consent before the final meeting with the trial judge." *Id.* at 362, 370 A.2d at 579. Dorsey's withdrawal of consent was held to be permissible because the court found that "the parties had agreed to the terms, but it is obvious that there was no consent thereto in open court nor was there a written stipulation filed in court." *Id.* at 363, 370 A.2d at 580. The intermediate appellate court also noted "By its nature, therefore, a consent decree cannot be entered unless both parties agree to the order which is presented to the

clerk." *Id.* at 361 n. 1, 370 A.2d at 579 n. 1. We agree with the Court of Special Appeals' statement in *Dorsey* that "the entry of a judgment by consent implies that the terms and conditions have been agreed upon and consent thereto given in open court or by filed stipulation." [2] *Id.* at 363, 370 A.2d at 580. Ms. Chernick contends that the written stipulation was not filed with the court as *Dorsey* requires because it was not docketed. We disagree. Generally, the "filing of pleadings and other papers with the court as required by these rules shall be made by filing them with the clerk of the court...." Md.Rule 1–322(a). The agreement was "filed" in accordance with the Maryland Rules in that the consent order was sent to the clerk of the court, officially stamped by the clerk, and placed in the court file. Further, at the time that the order was filed both parties agreed and consented to its terms. The parties intended for the agreement to be binding and to terminate the litigation if approved by the court. Pursuant to that agreement, the case was removed from the Master's trial calendar. Once a consent judgment is agreed to by the parties, executed by the parties or their authorized agents, filed with the court, and the case is taken off the trial calendar, the court may sign that consent order. The fact that one of the parties may have changed his or her mind shortly before or shortly after the submitted consent order was signed by the court does not invalidate the signed consent judgment.

It is further contended by Ms. Chernick that we should adopt the rule in some other jurisdictions that a consent judgment or consent decree should not be entered unless the consent continues until the moment the court undertakes to make the agreement the judgment of the court.

---

2. We note that other states have held that when the parties have represented in open court that they have reached a settlement agreement neither party has an absolute right to withdraw consent before judgment is entered. *See Klein v. Klein,* 544 P.2d 472, 476 (Utah 1975); *In re Cartmell's Estate,* 120 Vt. 234, 138 A.2d 592, 594–95 (1958). These courts, however, have held that the trial judge has discretion to allow the consent to judgment to be withdrawn prior to the actual entry of judgment. *Id.*

The authority Ms. Chernick cites for this rule is the Texas intermediate appellate court's decision in *Seibert v. Seibert*, 759 S.W.2d 768 (Tex.Ct.App.1988). We decline to accept the rationale of *Seibert* and note that it is based on the doctrine we rejected in *Clark* and *Chertkof* that "[a] party to a settlement agreement may revoke his consent to settle a case before judgment is rendered." *Id.* at 770. Ms. Chernick also relies on the case of *Lownds v. Lownds*, 41 Conn.Supp. 100, 551 A.2d 775 (1988). Her reliance is misplaced. In *Lownds*, the parties entered into a stipulation which, if approved by the court, would modify the provisions of a prior alimony support order. The agreement, however, was never presented to the court and the wife apparently repudiated the agreement claiming it was obtained under duress. She also sought enforcement of the original court order. The Connecticut court agreed and held that "[d]uress was the foundation of this agreement ..., therefore, ... it is invalid and unenforceable." *Id.* at 780. Ms. Chernick makes no claim of duress. Mr. Chernick has conceded that the consent judgment should not have been signed and should be reversed if there was no contract to settle or if the agreement was made under duress or even if it was inequitable. He contends, and we agree, no such showing has been made by Ms. Chernick.

We hold that where, as in the instant case, the parties have reached a valid contractual agreement as to the terms of a consent judgment, have reduced it to writing and signed the proposed judgment through their authorized agents, have filed it with the court and removed the case from the trial calendar, a judge may sign the "consent judgment" even if prior thereto one party has tried to rescind the contract to settle. Whether a judge could still have signed the "consent judgment" even if all those factors were not present is not before us in the instant case.

### III. ABANDONMENT OF MOTION TO TERMINATE ALIMONY

Ms. Chernick's final contention is that Mr. Chernick abandoned his motion to terminate alimony by "his unexplained

failure to take reasonably diligent steps to obtain a ruling on said motion." This contention is untenable.

The written agreement filed by the parties in the form of a proposed consent judgment rendered the motion to terminate alimony moot because the parties intended that the agreement was a final settlement of the controversy between them and binding upon them unless the court refused to approve it. The hearing on Mr. Chernick's motion to terminate alimony, as well as the deposition in preparation for the hearing, had been cancelled. After Ms. Chernick attempted to withdraw consent to the agreement, Mr. Chernick maintained that the agreement was still valid. We cannot view his actions as having abandoned his motion to terminate alimony.

JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED.

COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY PETITIONER.