636 A.2d 1016

B. FRANK JOY COMPANY et al.

v.

Benjamin ISAAC.

No. 73, Sept. Term, 1993.

Court of Appeals of Maryland.

Feb. 10, 1994.

**630**

David O. Godwin, Jr., (Brian C. Kent, Montedonico, Hamilton, & Altman, P.C. all on brief), Frederick, for petitioner.

Steven M. Nemeroff, (Wortman, Nemeroff & Bulitt all on brief), College Park, for respondent.

Argued before MURPHY, C.J., RODOWSKY, McAULIFFE,* CHASANOW, KARWACKI and ROBERT M. BELL, JJ., and CHARLES E. ORTH, Jr., Judge (retired), Specially Assigned.

CHARLES E. ORTH, Jr., Judge, Specially Assigned.

I

A

We have ofttimes been called upon in resolving an appeal to divine the Legislature's intendment in its enactment of a particular statute. At times the legislative intent seems to be phantasmagoric. *See* Michael S. Miller, *Ghost Hunting: Finding Legislative Intent in Maryland, A Checklist of Sources* (October 1984) (unpublished manuscript available in the Maryland State Law Library); Michael S. Miller and Judith C. Levinson, "Ghost Hunting: Searching for Maryland Legislative History," *Maryland Bar Journal,* July–August,

---

* McAuliffe, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

1989, at 11–16. Over the years, however, we have adopted guidelines or canons to assist us in our task of construing or interpreting a statute. *See, e.g., Kaczorowski v. City of Baltimore,* 309 Md. 505, 513–516, 525 A.2d 628 (1987); *Franklin Square Hosp. v. Laubach,* 318 Md. 615, 619–620, 569 A.2d 693 (1990); *Brodsky v. Brodsky,* 319 Md. 92, 98, 570 A.2d 1235 (1990); *Morris v. Prince George's County,* 319 Md. 597, 603–604, 573 A.2d 1346 (1990); *Fairbanks v. McCarter,* 330 Md. 39, 46, 622 A.2d 121 (1993); and cases cited in those opinions.

There is no doubt that the beginning point of statutory construction is the language of the statute itself.

*Morris,* 319 Md. at 603, 573 A.2d 1346.

But our endeavor is always to seek out the legislative purpose, the general aim or policy, the ends to be accomplished, the evils to be redressed by a particular enactment.

*Id.* at 603–604, 573 A.2d 1346. "Of course, in our efforts to discover purpose, aim, or policy we look at the words of the statute." *Kaczorowski,* 309 Md. at 513, 525 A.2d 628. But, "we are always free to look at the context within which statutory language appears." *Morris,* 319 Md. at 604, 573 A.2d 1346. *See Fairbanks v. McCarter,* 330 Md. at 46, 622 A.2d 121.

The purpose, in short, determined in light of the statute's context, is the key.

*Kaczorowski,* 309 Md. at 516, 525 A.2d 628.

### B

The statute we are called upon to interpret here is Maryland Code (1957, 1985 Repl.Vol.) Article 101, § 52, a part of the Workers' Compensation Act.[1]

---

1. At the time this case was passing through the judicial mill, the "Workmen's Compensation Act" was codified in Maryland Code (1957, 1985 Repl.Vol.) Article 101, §§ 1–102. Art. 101 was repealed by Acts 1991, chs. 8 and 21 and reenacted under the title "Workers' Compensation." It was codified in a new Labor and Employment Article of the Md.Code (1991), erroneously labeled "1991 Replacement Volume," as §§ 9–101 through 9–1201. The Legislature, however, had anticipated

At any time after a claim for compensation under this article has been filed with the Workmen's Compensation Commission by any claimant, the said claimant and/or his or her dependents may, with the approval of the Commission, enter into an agreement with the employer or insurer of such employer, with the Subsequent Injury Fund, or with the Uninsured Employers' Fund providing for a final compromise and settlement of any and all claims which the said employee or his or her dependents might then or thereafter have under the provisions of this article, upon such terms and conditions as the Commission shall, in its discretion, deem proper. Any such settlement when approved by the Commission shall be binding upon all parties thereto, and no such settlement shall be effective unless approved by the Commission. Any final compromise and settlement of a claim between the claimant or his or her dependents and the employer and insurer shall also preclude the right of the claimant or his dependents to proceed against the Subsequent Injury Fund on the claim, unless the Commission specifically orders otherwise. Upon death, any balance payable under such final compromise and settlement shall be an asset in the hands of the personal representative of the deceased party to such final compromise and settlement.

Article 101, § 52 now appears in Md.Code (1991), § 9–722 of the Labor and Employment Article. *See* note 1, *supra.* Sec-

---

the change of name from "Workmen's Compensation" to "Workers' Compensation." Acts 1984, ch. 279, effective 1 July 1984, codified as Art. 101, § 14A. It declared:

(a) *"Workmen's" revised as "workers' "*.—In the preparation of any comprehensive revision of this article and attendant cross-references by the Division of Statutory Division of the Department of Legislative Reference, all terminology referring to "workmen's", or like terms, shall be revised as "workers' " or like terms.

(b) *Terms synonymous.*—In this article and for purposes of any comprehensive revision of this article as provided in subsection (a) of this section, the terms "workmen's compensation" and "workers' compensation" are considered to be synonymous.

Therefore, we refer hereinafter to the statutory scheme concerning compensation to injured workers by its current name, "Workers' Compensation Act" or simply as the "Act."

tion 9–722 does not change the substance of Article 101, § 52. It merely dissects the narrative language of the former codification and presents it in a more readable format. We set § 9–722 out here because it is easier to sort out the various provisions of the section under the new format. LE § 9–722 reads:

### Claim settlement.

(a) *In general.*—Subject to approval by the Commission under subsection (b) of this section, after a claim has been filed by a covered employee or the dependents of a covered employee, the covered employee or dependents may enter into an agreement for the final compromise and settlement of any current or future claim under this title with:

    (1) the employer;

    (2) the insurer of the employer;

    (3) the Subsequent Injury Fund; or

    (4) the Uninsured Employers' Fund.

(b) *Contents.*—The final compromise and settlement agreement shall contain the terms and conditions that the Commission considers proper.

(c) *Approval.*—A final compromise and settlement agreement may not take effect unless it has been approved by the Commission.

(d) *Effect.*—(1) When approved by the Commission, a final compromise and settlement agreement is binding on all of the parties to the agreement.

(2) Unless the Commission orders otherwise, a final compromise and settlement agreement between a covered employee or the dependents of a covered employee and the employer or its insurer precludes the right of the covered employee or the dependents of the covered employee to proceed against the Subsequent Injury Fund on the claim.

(e) *Survival of right to payment.*—If an individual entitled to payment under a final compromise and settlement agreement dies before the individual receives the total

amount payable, the balance payable is an asset of the estate of the individual.

Article 101, § 52, as a part of the Workers' Compensation Act, is not haunted by a ghost of legislative intent. The Legislature long ago pronounced loudly and clearly the legislative purpose of the Workers' Compensation Act, its general aim and policy, the ends to be accomplished and the evils to be redressed.

Eighty years ago, aware of a national trend to protect and compensate industrial workers injured on the job, the General Assembly passed Chapter 800 of the Acts of 1914, which has since become the Workers' Compensation Act. In the preamble to the Act, the legislators recognized that industries necessary for the prosperity of the state involve "injury to large numbers of workmen, resulting in their partial or total incapacity or death" and that, under the legal system at the time, determining the responsibility of the employer meant "great and unnecessary cost ... in litigation, which cost is borne by the workmen, the employers and the taxpayers...." Beyond that,

> the State and its taxpayers are subjected to a heavy burden in providing care and support for such injured workmen and their dependents, which burden should, in so far as may be consistent with the rights and obligations of the people of the State, be more fairly distributed....

Acts of 1914, ch. 800.

To alleviate the burden on both the citizens of Maryland and the workers and their families, the Act withdrew from private controversy all questions of fault in accidents arising in hazardous employment. To provide "sure and certain relief for workmen injured in extra-hazardous employments and their families and dependents," the General Assembly created the State Industrial Accident Commission, which is now the Workers' Compensation Commission. The Legislature bestowed upon the Commission the exclusive administrative and supervisory authority over the Act. The Commission's duties, in the main, were to examine individual cases and decide whether

to order employers to compensate injured employees, and, if so, in what amount, so as to fulfill the expressed policy, aims and objectives of the legislation.

This Court has long recognized the purposes and aims of the Act as expressed by the Legislature. *See Gross v. Sessinghause & Ostergaard,* 331 Md. 37, 39, 626 A.2d 55 (1993); *Queen v. Agger,* 287 Md. 342, 343, 412 A.2d 733 (1980). We have construed its provisions as liberally as possible in favor of injured employees and their families, in compliance with the Legislative command to interpret the Act in ways that "effectuate its general purpose." Art. 101, § 63.[2] *See Alitalia v. Tornillo,* 329 Md. 40, 48–49, 617 A.2d 572 (1993); *Howard Co. Ass'n, Retard. Cit. v. Walls,* 288 Md. 526, 530, 418 A.2d 1210 (1980).

## II

The call for us to interpret Article 101, § 52 came in this fashion:

Benjamin Isaac[3] filed a claim with the Workers' Compensation Commission against B. Frank Joy Company, his employer, and Zurich American Insurance Company, Joy's insurer,[4] to recover benefits under the Act resulting from an accidental personal injury arising out of and in the course of his employment. The injury occurred on 4 April 1984. On 1 July 1990, the parties executed the following document:

*AGREEMENT OF COMPROMISE AND SETTLEMENT*

THIS AGREEMENT made on this *1st* day of *July,* 1990, by and between BENJAMIN ISSACS, [sic] hereinafter

---

2. LE § 9–102(a) substitutes "carry out" for "effectuate."

3. Benjamin Isaac is referred to as "Isaacs" throughout the proceedings. His signature, however, on various documents in the record shows that his correct surname is "Isaac."

4. Hereinafter, "Joy" includes both the B. Frank Joy Company and the Zurich American Insurance Company unless otherwise indicated.

referred to as "Claimant", B. FRANK JOY COMPANY, hereinafter referred to as "Employer", and ZURICH AMERICAN INSURANCE COMPANY, hereinafter referred to as "Insurer",

WITNESSETH:

WHEREAS, the Claimant has filed a claim with the Workmen's Compensation Commission of Maryland, hereinafter referred to as the Commission, to recover Workmen's Compensation benefits for disability resulting from accidental personal injury, arising out of and in the course of his employment with the Employer, which injury occurred on or about April 4, 1984; and

WHEREAS, the Employer and/or Insurer deny the allegations of the Claimant, either in whole or in part, so that there now exists a dispute between the Claimant on the one hand, and the Employer and Insurer on the other, as to whether the Claimant is entitled to any Workmen's Compensation benefits and/or, if so entitled, as to the nature and extent of disability involved and the benefits or additional benefits to be paid or provided; and

WHEREAS, irrespective of and notwithstanding the divergent views held by the parties hereto concerning the occurrence of the aforesaid accidental personal injury, the nature and extent of the disability resulting therefrom, the Workmen's Compensation allowable therefor, and all other benefits or rights that any of the parties hereto might or could have, the said parties have reached an agreement providing, subject to the approval of the Commission, for a compromise and settlement of this claim, which compromise and settlement will discharge the Employer and Insurer from any further liabilities for compensation benefits to which the Claimant or his personal representative or beneficiaries might now or could hereafter be entitled under the said provisions of the Workmen's Compensation Laws of Maryland against the Employer and/or Insurer, including payment of all future medical treatment and other necessary medical services relating to said injury, as provided by Article 101, Section 37 of the Maryland Annotated Code.

NOW THEREFORE, it is hereby agreed as follows:

1. The Employer and the Insurer hereby agree to pay the Claimant the sum of Eighteen Thousand ($18,000.00) Dollars payable to the Claimant in a lump sum, less advances previously paid by the Employer/Insurer in the amount of Two Thousand Five Hundred Thirty Seven Dollars and Forty Three ($2,537.43) Cents, for the total amount to be paid to the Claimant in the amount of Fifteen Thousand Four Hundred Sixty Two Dollars and Fifty Seven ($15,462.57) Cents.

2. The Employer and the Insurer hereby agree to pay the Claimant the minimum sum of One Hundred Eight Thousand ($108,000.00) Dollars, payable at the rate of Four Hundred Fifty ($450.00) Dollars, per month guaranteed for twenty (20) years and to continue for life thereafter.

3. The Claimant hereby accepts this Agreement of Compromise and Settlement and the aforesaid lump sum payment in compromise and settlement of any and all claims which the Claimant or his personal representative, dependents, wife and children or any other parties which might become beneficiaries under the said Workmen's Compensation Law, might now or could hereafter have under the provisions of the said Law, arising out of the aforesaid injury, and does hereby, on behalf of himself and all of said other parties, discharge the Employer and Insurer from any further liabilities for all other claims of whatsoever kind which might or could hereafter arise under the said Law from the said injury.

4. That the Employer/Insurer and Claimant hereby agree that the Employer/Insurer shall be liable for all of the Claimant's medical treatment and necessary medical services relating to the injury sustained on April 4, 1984.

5. This Agreement is made subject to approval of the Commission, and when so approved shall immediately become effective and binding upon all of the parties hereto.

The Agreement was signed by the attorney for Isaac, by Isaac and by a representative of the employer and the insurer.

Attached to the agreement was an "Affidavit in Lieu of Testimony" by Isaac. Its general import was that Isaac acknowledged that he understood what he was doing in signing the Agreement and was aware of the ramifications flowing therefrom. Also attached to the Agreement was a document entitled "Consent of Claimant," executed by Isaac and his attorney, whereby Isaac consented to a fee for his attorney "in accordance with the Commission's Fee Schedule."

On 27 July 1990, Joy and Isaac presented the Agreement and its attachments to the Commission for approval. A hearing was set for 10 September. Eight days before the hearing Isaac died of causes unrelated to his claim for compensation. At the hearing Joy unilaterally sought to rescind the Agreement. The Commission ordered that the Agreement "is hereby approved" and directed Joy to comply with its terms. Joy's motion for rehearing was denied. Joy appealed to the Circuit Court for Montgomery County. The court denied Joy's motion for summary judgment, granted Isaac's motion for summary judgment and affirmed the Commission's order approving the Agreement. Joy appealed to the Court of Special Appeals, which affirmed the judgments of the circuit court. *Joy Co. v. Isaacs*, 95 Md.App. 440, 622 A.2d 140 (1993). We granted Joy's petition for a writ of certiorari, 331 Md. 719, 629 A.2d 720. Joy wants to know whether the Commission was right in enforcing the Agreement over its attempt to rescind it.

### III

### A

We do not have a transcript of the proceedings of the hearing before the Commission but we have a copy of its order:

ORDERED by the Workmen's Compensation Commission of Maryland this 14 day of Sept, 1990, that the aforegoing Agreement of Compromise and Settlement is hereby approved and further directs the Employer and Insurer to pay the guaranteed sum of One Hundred Twenty Eight

Thousand ($126,000.00) [sic] Dollars, in the following manner consistent with the Agreement of Compromise and Settlement, in addition to compensation previously paid in settlement of their obligations as set forth in said Agreement:

1. Wortman, Nemeroff & Bulitt, Attorneys for Claimant, a counsel fee of ...... ~~$7,000.00~~ 6,100.00

2. Claimant, a lump sum payment of...... ~~$9,462.57~~ 9,362.57 as agreed to by the Claimant, Insurer and Employer, less reimbursement for advanced permanent partial disability benefits in the amount of $2,537.43 previously paid by the Employer/Insurer.

3. Claimant, monthly payments of $450.00 guaranteed for 20 years and continuing for life thereafter ........................ $108,000.00

The order was signed by two Commissioners.

## B

On appeal to the circuit court, the facts were not disputed. The judge said in disposing of the motions for summary judgment:

I looked at the agreement. This is an agreement of compromise and settlement, and I look at it as an agreement with a condition subsequent.

He explained:

The condition is that it is not going to be effective unless [the Commission] approve[s]. Once they approve, then it is a done deal.

After hearing further argument, the judge observed that he thought "the law is there to protect the claimant. That is the whole thrust of this law, not to protect the company." He emphasized:

This was an agreement. If it was approved, then it became effective and binding. If the Commission didn't approve it under the rules and regulations of the Commission, looking to all the factors in this case, then it wouldn't have been binding. . . .

But, he pointed out, the Commission did approve it after hearing and rejecting the arguments the Company made. He thought that "under the law what the Commission did was right." He ruled:

Therefore, I will grant the claimant's motion for summary judgment and deny the employer's motion for summary judgment.

## C

The Court of Special Appeals reached the same result. It declared:

We agree with the circuit court's finding that the agreement contemplates that Commission approval or disapproval is a condition subsequent to the agreement between the parties.

*Joy Co. v. Isaacs,* 95 Md.App. at 448, 622 A.2d 140. It explained:

Due to the existence of the condition subsequent, the agreement was not *enforceable* until Commission approval. Indeed, under the workers' compensation statute the parties were barred from entering into an immediately enforceable agreement.

*Id.* (emphasis in original). The court believed that, "[i]n sum . . . the settlement agreement in this case was not merely a 'proposed settlement agreement' as [Joy] argue[s] . . . ." *Id.* The court continued:

Rather, we view the settlement agreement in this case, which was signed by both parties and jointly submitted to the Commission for approval, as a binding agreement that was to become enforceable upon subsequent Commission approval, or, in the alternative, the agreement would become void upon Commission disapproval.

*Id.* In reaching this decision the court relied heavily on *Chernick v. Chernick,* 327 Md. 470, 610 A.2d 770 (1992). 95 Md.App. at 445–446, 448, 449–450, 622 A.2d 140. It disavowed Joy's claim that under *Safeway Stores v. Altman,* 296 Md. 486, 463 A.2d 829 (1983) and "numerous decisions in other jurisdictions," that it may withdraw from the Agreement with or

without cause prior to the Commission's approval. 95 Md. App. at 443, 622 A.2d 140. The court rejected Joy's argument that the requirement that the Commission approve the Agreement is a condition precedent to the existence of a contract. *Id.* at 444, 622 A.2d 140. The court did not agree with Joy's contention that

> signed settlement agreements submitted to the Commission for approval are merely "proposed settlement agreements" from which either party may withdraw at any time prior to Commission approval.

*Id.* at 443–444, 622 A.2d 140. Nor did the court share Joy's view that the Agreement was void for lack of consideration. *Id.* at 450, 622 A.2d 140.

## IV

Before us, Isaac and Joy are at loggerheads as to the applicable law. Isaac claims that the requirement that the Agreement be subject to the approval of the Commission is a condition subsequent; Joy says it is a condition precedent. Isaac asserts that the issue is controlled by *Chernick;* Joy claims that *Chernick* is inappropriate. Joy urges that *Safeway Stores* governs this action; Isaac declares that *Safeway* is distinguishable from the case at hand. The bottom line is that Isaac believes that the Commission and the Circuit Court and the Court of Special Appeals were right; Joy believes that all of them were wrong.

## V

## A

We do not travel the path followed by the circuit court and the Court of Special Appeals to reach a determination of the question posed by this appeal. We believe that the propriety of the Commission's approval of the Agreement lies not in whether the requirement calling for the Commission's approval was a condition precedent or a condition subsequent under the law of contracts, but in the Legislature's intendment when it imposed the requirement for approval. To ascertain what

the Legislature intended, we apply our guidelines of statutory construction in the context of the statute's purpose.

We start with the determination that the Agreement here was a valid bilateral contract. The preamble to the Agreement declared that "the parties have reached an agreement," and the body of the Agreement was prefaced by the statement "it is hereby agreed as follows . . . ." We are in accord with the intermediate appellate court's rejection of Joy's contention that the Agreement was not supported by adequate consideration. 95 Md.App. at 450, 622 A.2d 140. Forbearance to exercise a right or pursue a claim, or an agreement to forbear, constitutes sufficient consideration to support a promise or agreement. *Erie Ins. Exch. v. Calvert Fire Ins.*, 253 Md. 385, 389, 252 A.2d 840 (1969). *See Chernick*, 327 Md. at 479–480, 610 A.2d 770. The Agreement was executed by the parties; there was no suggestion that it was tainted by fraud, coercion, undue influence, or mistake. The employer and its insurer were sophisticated parties and Isaac was represented by an attorney throughout the negotiations. All of them knew exactly what they were doing and the consequences of their action. We believe that whether the condition be deemed a condition precedent or a condition subsequent is of no consequence in the circumstances. We look outside the law of contracts and focus on the intent of the Legislature.

Art. 101, § 52 was clearly enacted to comport with the primary objective of the Act: the protection of the injured worker; the requirement of approval is in furtherance of this benevolent objective and approval is placed squarely in the hands of the Commission. The approval of an agreement submitted to the Commission is exclusive in the Commission subject only to its sound discretion. The Commission is not even bound by the terms agreed upon by the parties; a final compromise and settlement must contain such terms and conditions that the Commission considers proper. Richard P. Gilbert and Robert L. Humphreys, Jr., Maryland Workers'

Compensation Handbook § 7.10, at 149, footnotes omitted, summed it up neatly:

> The Act confers upon the Commission the authority to approve or disapprove the final compromise and settlement of workers' compensation claims "upon such terms and conditions as the Commission shall, *in its discretion,* deem proper." Commission approval is an absolute prerequisite for settling a claim. A claim cannot be settled either privately between the parties or in any other legal forum without the Commission's blessing.

(quoting Art. 101, § 52 and adding emphasis). Gilbert observed:

> The Act makes pellucid that approval of a settlement and all of its terms is *discretionary* with the Commission. The Commission is to utilize its unique expertise when deciding upon a proposed settlement in order to insure the State's interest in seeing to it that an injured worker is compensated. The Commission is a bulwark between innocent but ignorant claimants and illusory or woefully inadequate compromises.

*Id.* at 149–150 (footnotes omitted) (emphasis added). *See* Maurice S. Pressman, *Workmen's Compensation in Maryland* § 5–3(13) (2d ed. 1977, 1980 Supplement).

■ In the light of the broad supervisory authority over compromise and settlement agreements bestowed on the Commission by the Legislature, tempered only by the exercise of sound discretion by the Commission and in view of the reasons prompting the grant of that authority, we believe that once the supervisory authority of the Commission has been called into play by the parties' submission of a valid agreement to the Commission for approval, it is consistent with and in furtherance of the Legislature's carefully devised scheme regarding workers' compensation that a party may not unilaterally withdraw from the Agreement without good cause being shown by the reneger to the satisfaction of the Commission at a hearing

on the matter.[5]

## B

We have not found an opinion of this Court that is decisive of the question before us. *Safeway Stores v. Altman,* 296 Md. 486, 463 A.2d 829, relied on in main part by Joy, is not apposite. In that case, Safeway, the employer, appealed a determination by the Commission that Altman, the employee, had sustained an accidental injury on the job. 296 Md. at 487, 463 A.2d 829. Shortly before trial, the parties entered into an oral settlement agreement that was to be reduced to writing and submitted to the commission. As a result, the trial was postponed. After learning that future medical expenses were not going to be paid by her husband's employer, Altman changed her mind about going through with the settlement and refused to sign the written agreement. 296 Md. at 488, 463 A.2d 829.

When it learned of the employee's reluctance to go through with the agreement and sign the documents, Safeway sought to have the agreement enforced by the circuit court reviewing its appeal of the Commission's decision that the injury occurred during the course of employment. The scuttled settlement agreement had not been submitted by the parties to the Commission for approval. The court then requested the Commission to give it an "advisory" opinion "to determine whether or not the settlement agreement [wa]s fair and reasonable under the circumstances of this case and should be approved or disapproved." 296 Md. at 488, 463 A.2d 829. The Commission held a hearing and ruled that the claimant could not be forced to sign the agreement. Counsel for the employer pointed out that this did not answer the question. The Commission modified its order to read that it found that the agreement was fair and reasonable. The Commission

---

5. The record before us does not disclose whether Joy informed the Commission or Isaac why it desired to withdraw from the Agreement.

ORDERED that the above entitled case be held for further consideration until further action is taken in this case; subject to the provisions of the Workmen's Compensation Law of Maryland.

Thus, the Commission did not affirmatively act on the matter of approval or disapproval.

The circuit court enforced the agreement but the Court of Special Appeals reversed on the ground that the circuit court had no authority to "require settlement of a workmen's compensation case entered into without the approval of the Workmen's Compensation Commission." *Altman v. Safeway Stores,* 52 Md.App. 564, 571, 451 A.2d 156 (1982). This Court held that there was not a binding agreement due to a lack of a meeting of the minds of the parties. 296 Md. at 489, 463 A.2d 829. Since the required approval of the Commission had not been obtained, "the right to enforce the proposed agreement did not exist." *Id.* at 490, 463 A.2d 829. We concluded:

It follows, therefore, that the circuit court erred in enforcing the proposed settlement agreement.

*Id.* On this basis, we affirmed the order of the Court of Special Appeals. *Id.* at 491, 463 A.2d 829. In the case at hand, there was a valid agreement properly submitted for approval to the Commission which enjoys the exclusive authority to approve or disapprove a settlement agreement as a matter within its sound discretion. It is apparent that *Safeway* is so distinguishable, factually and legally, from the case before us that it plays no part in the determination of the question presented to us.

As noted above, the Court of Special Appeals in the case at hand leaned heavily for support on *Chernick v. Chernick,* 327 Md. 470, 610 A.2d 770. *Chernick* concerned an agreement of divorced parties to enter into a "consent order" which modified their existing divorce decree. The consent order called for the endorsement of the court to be effective. Before the court approved it, the former wife reneged, and sought to rescind it. We found that the parties had reached a valid contractual agreement as to the terms of the consent order,

reduced it to writing, signed it through authorized agents, filed it with the court, and removed it from the trial calendar. We held that in those circumstances

a judge may sign the "consent judgment" even if prior thereto one party has tried to rescind the contract to settle.

327 Md. at 485, 610 A.2d 770. *Chernick*, on its facts and circumstances, is not inconsistent with our resolution of the question here. But the statute before this Court played no role in *Chernick*. Since we rely on the legislative intent of a statute with which *Chernick* was not concerned, *Chernick* does not affect our conclusions.

## VI

We summarize. The benefits and obligations spelled out in a settlement agreement do not become binding on the parties until the Commission approves a valid agreement. That is the plain language of Article 101, § 52. Thus, any payments to an injured worker cannot be demanded under the terms of the agreement until the Commission puts its imprimatur on what was negotiated and agreed upon by the parties. That does not mean, however, that the parties have total freedom to renege a valid bilateral agreement they have formally submitted for Commission approval in compliance with the Act. When they present a duly executed settlement agreement to the Commission, the parties thereby relinquish control of the matter to the supervisory powers, authority, and discretion bestowed upon the Commission. Then a party, acting unilaterally, does not have unfettered license to withdraw what that party has submitted in good faith.

A party becoming unhappy with the agreement negotiated, however, and desiring to forhoo it, is not without hope. At the hearing to determine the approval *vel non* of the agreement,[6]

---

6. COMAR 14.09.01.19, dealing with "Agreements for Final Compromise and Settlement" permitted by the Workers' Compensation Act, provides under paragraph E:

The Commission may not approve an agreement for final compromise and settlement without a hearing unless the agreement is

the discontented party may attempt to establish to the satisfaction of the Commission that there is good cause for complete withdrawal by that party from the agreement, or urge that the Commission exercise its discretion to modify, strike, or add certain provisions to satisfy the party's objections. Of course, the party happy with the agreement may argue that the agreement be approved. If the final result is that the agreement ends up with terms and conditions that the Commission considers proper and in the best interest of the employee, the Commission may exercise its discretion to approve the agreement; otherwise, the Commission may exercise its discretion to disapprove it. If it is approved, it is effective and binding on all of the parties to the agreement; if it is disapproved, it is not effective and may not be enforced. What a party *may not do* is flout the legislative intent by unilaterally removing a settlement agreement from the supervisory powers of the Commission once the agreement has been formally submitted by the parties to the Commission for approval.

As we have seen, our prior opinions have not answered the question presented on this appeal. But with the expressed policy, aims, objectives and purposes of the Workers' Compensation Act with its recognition of the Commission's unique expertise, shining bright and clear, and considering the exclusive authority which is vested in the Commission to administer and supervise the Act, aided by that particular expertise, we cannot conceive that the Legislature meant that the approval of the Commission of an agreement of compromise and settlement was to be governed by the strictures of the law of contracts rather than resting in the sound discretion of the Commission. The intention of the Legislature, not the law of contracts, is the key.

We observe that our determination that the approval *vel non* of an agreement of compromise under the Workers'

---

accompanied by the notarized affidavit of the claimant, on the form prescribed by the Commission, waiving the hearing. The Commission may require a hearing even when the affidavit is filed.

Compensation Act is within the sound discretion of the Commission rather than a matter of contract law does not impugn our opinions stretching back over a century and a half that were concerned with the contract law of conditions subsequent and conditions precedent. *See, e.g., Creswell's Lessee v. Lawson,* 7 G. & J. 227, 238–244 (Md.1835) (real property, wills and trusts); *Dalrymple v. Lauman,* 23 Md. 376, 400 (1865) (contract to purchase bonds); *Rinaudo v. Bloom,* 209 Md. 1, 5, 120 A.2d 184 (1958) (contract for real property); *Sagner v. Glenangus Farms,* 234 Md. 156, 198 A.2d 277 (1964) (contract for sale of shares of ownership of thoroughbred horse); *Barnes v. Euster,* 240 Md. 603, 604–606, 214 A.2d 807 (1965) (contract for sale of real property); *Shoreham v. Randolph Hills,* 248 Md. 267, 276–277, 235 A.2d 735 (1967) (contract for sale of real property); *Chirichella v. Erwin,* 270 Md. 178, 181–182, 310 A.2d 555 (1973) (specific performance of a contract for sale of real property); *Laurel Race Course v. Regal Constr.,* 274 Md. 142, 154, 333 A.2d 319 (1975) (building contract); *NSC Contractors v. Borders,* 317 Md. 394, 405–406, 564 A.2d 408 (1989) (contract for construction of building). None of these opinions speaks to Art. 101, § 52. We have been referred to only one of our cases that discussed a condition in connection with Art. 101, § 52, namely, *Safeway Stores,* 296 Md. 486, 463 A.2d 829. Our own search has turned up no others. In *Safeway,* which we have found to be inapposite to the case at hand, the phrase "condition precedent" appeared in a quote from 17 Am.Jur.2d, *Contracts,* § 24 (1964) with respect to the ripening of a writing into a contract, not as to the approval requirement of § 52. 296 Md. at 489, 463 A.2d 829.

We hold that the Commission did not abuse its discretion in approving the Agreement submitted to it. Therefore, the grant of Isaac's motion for summary judgment and the denial of Joy's motion for summary judgment by the Circuit Court for Montgomery County was proper. By the same token the affirmance by the Court of Special Appeals of the judgments of the circuit court was not erroneous, even though it reached that result for reasons different from those leading to our holding.

*JUDGEMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED;*

*COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY PETITIONER.*

RODOWSKY and McAULIFFE, JJ., concur in the result only.